In Re Max BENNETT, Judge of the 319th Judicial District Court, Nueces County, Texas, Relator.

No. 96–0598.

Supreme Court of Texas.

Dec. 4, 1997.

Rehearing Overruled March 13, 1998.

Carlos Villarreal, Corpus Christi, for Relator.

Eric Brown, Austin, Linda C. Breck, Corpus Christi, for Respondent.

## OPINION

PER CURIAM.

In this mandamus proceeding we hold that neither the filing of a nonsuit nor the subsequent removal of a case to federal court deprived the state court of jurisdiction to consider, *sua sponte*, whether sanctions should be imposed on attorneys for pre-removal conduct when the sanctions are unrelated to the merits of the removed case. We further hold that the trial court did not abuse its discretion in imposing sanctions under the facts of this case. Accordingly, we conditionally issue a writ of mandamus directing the

court of appeals to vacate the writ of mandamus in which it ordered the trial court to vacate sanctions, 925 S.W.2d 338.

### I

This case arises out of a deliberate circumvention of the random assignment of cases in a county in which eight district courts preside. The attorneys who were sanctioned by the Honorable Max Bennett of the 319th District Court of Nueces County for their conduct are Robert C. Hilliard and Andrew Schirrmeister, III. They represent approximately seven hundred Peruvian plaintiffs who claim to have been injured by toxic gases and chemicals released by the Southern Peru Copper Corporation.

On August 30, 1995,[1] plaintiffs' counsel filed the first of seventeen lawsuits in Nueces County. The first suit was brought on behalf of three claimants. In accordance with the local rules of Nueces County, the case was randomly assigned to Judge Bennett's court.[2] Plaintiffs' counsel then filed sixteen more lawsuits, each having no more than five plaintiffs. The petitions were filed one after the other, only minutes apart, late in the afternoon of August 30 and on the morning of August 31, 1995. Each suit named different plaintiffs, all citizens of Peru, but the same defendants were sued in every case, and each petition contained identical factual allegations and legal claims. Each case was randomly assigned to one of the eight district courts in the county, but plaintiffs' counsel instructed the clerk of the court not to prepare citation for service in any of the first sixteen cases that had been filed.

None of the first sixteen suits was assigned to the 105th District Court. But the seventeenth was. Two hours after that assignment, plaintiffs' counsel filed an amended petition in the 105th District Court adding

---

1. As a historical note, amendments to the *forum non conveniens* statute enacted by the 74th Legislature went into effect on September 1, 1995, and applied to all cases filed on or after that date. *See* Tex. Civ. Prac. & Rem.Code § 71.051 historical note [Act of May 24, 1995, 74th Leg., R.S., ch. 567, § 2, 1995 Tex. Gen. Laws 3363, 3364].

2. Rule 3 of the Local Rules of the District Courts of Nueces County (Dec. 6, 1988) and the Substitute Order on Assigning Criminal and Civil Cases in the District Courts of Nueces County (Nov. 19, 1992) both provide that the district clerk of Nueces County shall randomly assign cases to the district courts of the county. The 105th District Court, however, is to receive one half the share of civil case assignments received by other district courts.

approximately seven hundred plaintiffs, though none of the claimants in the other sixteen suits were ever joined. Once counsel for plaintiffs had finally succeeded in lodging a case in the 105th District Court, they instructed the clerk of the court to issue citation for service on the defendants. Service was never requested in any of the sixteen other suits.

On September 5, 1995, five days after securing the 105th District Court as the forum of choice, plaintiffs' counsel filed notices of nonsuit in all sixteen previously filed suits pursuant to TEX.R. CIV. P. 162.[3] Judge Bennett apparently was skeptical of this turn of events. He did not sign an order of nonsuit in the case pending in his court, but instead, on October 2, 1995, signed a "Sua Sponte Order Abating Dismissal and Setting Hearing on Transfer, Consolidation and Sanctions." The order required plaintiffs' counsel to appear on November 10, 1995 to show cause why the other sixteen lawsuits should not be transferred and consolidated into the case before Judge Bennett and why plaintiffs' counsel should not be sanctioned for intentionally violating local rules implementing random assignment of cases in Nueces County or the Texas Rules of Civil Procedure, including Rules 1, 2, 3a, 41, and 174.

Prior to the hearing on sanctions before Judge Bennett, the defendants removed all seventeen cases to federal court, including the case pending before Judge Bennett. Shortly after removal, plaintiffs' counsel filed with the federal district court a "Notice of Prior Filing of Nonsuit, and, in the Alternative, Notice of Dismissal pursuant to FRCP 41(a)(1)."[4]

Judge Bennett nevertheless went forward with a hearing on the matter of sanctions on November 10, as scheduled. At that hearing, counsel for the plaintiffs were themselves represented by counsel and were given the opportunity to call witnesses. Plaintiffs'

counsel asserted that they acted in good faith and intended to diligently prosecute the case remaining in the 105th District Court. Hilliard admitted, however, that the filing process he used was designed to get his clients' claims before a particular judge. At the close of the hearing, Judge Bennett announced from the bench that he intended to enter an order requiring plaintiffs' counsel each to pay $10,000 as a sanction.

Meanwhile, on November 16, 1995, before Judge Bennett had reduced his rulings to a written order, the federal district court consolidated all seventeen cases that had been removed. That same day, the federal district court dismissed, but did not remand, all the cases that had been nonsuited, including the one removed from Judge Bennett's court, leaving pending only the case removed from the 105th District Court. (The federal district court eventually entered final judgment in the case removed from the 105th District Court on January 22, 1996, dismissing the case under the doctrines of comity of nations and *forum non conveniens*. The United States Court of Appeals for the Fifth Judicial Circuit has affirmed that judgment. *Torres v. Southern Peru Copper Corp.*, 113 F.3d 540 (5th Cir.1997).)

In January 1996, Judge Bennett proceeded to memorialize his rulings from the sanctions hearing in formal written orders. Among the express findings included in those orders, Judge Bennett found that counsel had knowingly and intentionally violated the Local Rules of Practice of the District Courts of Nueces County that provide for the random assignment of cases and had violated the Texas Rules of Civil Procedure, in particular Rules 13 and 1. Judge Bennett never signed an order dismissing the case pursuant to the notice of nonsuit.

Plaintiffs' counsel filed a motion for leave to file a petition for writ of mandamus in the

---

3. Rule 162 provides in part: "At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit...." TEX.R. CIV. P. 162.

4. FED.R.CIV.P. 41(a)(1) is the federal analogue to TEX.R. CIV. P. 162 and provides:
   RULE 41. DISMISSAL OF ACTIONS

(a) Voluntary Dismissal: Effect Thereof.
(1) *By Plaintiff; By Stipulation.* ... [A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs....

court of appeals challenging Judge Bennett's sanctions. The court of appeals conditionally issued a writ of mandamus directing Judge Bennett to vacate that order and to sign an order dismissing the case pursuant to the notice of nonsuit.

Judge Bennett has now instituted this mandamus proceeding and requests that this Court issue a writ directing the court of appeals to vacate its writ of mandamus. We first consider the extent of Judge Bennett's authority to sanction counsel after the notice of nonsuit was filed.

## II

■ The court of appeals held that because no affirmative relief had been requested by any defendant, the filing of a nonsuit deprived the trial court of jurisdiction to take any action other than the ministerial act of signing an order dismissing the case. 925 S.W.2d at 341. That holding gives an inordinate amount of weight to a notice of nonsuit and strips a trial court of authority to sanction the conduct of counsel when appropriate.

■ Generally, plaintiffs have the right under TEX.R. CIV. P. 162 to take a nonsuit at any time until they have introduced all evidence other than rebuttal evidence. *See Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 854 (Tex.1995); *Aetna Cas. & Sur. Co. v. Specia*, 849 S.W.2d 805, 806 (Tex.1993). Such a nonsuit may have the effect of vitiating earlier interlocutory orders and of precluding further action by the trial court, with some notable exceptions. *See Hyundai*, 892 S.W.2d at 854–55 (holding that once a trial court announces a decision on a motion for partial summary judgment, that claim is no longer subject to the plaintiff's right to nonsuit); *Greenberg v. Brookshire*, 640 S.W.2d 870, 872 (Tex.1982) (stating that the rule recognizing a plaintiff's right to nonsuit should not be confused with the rule recognizing the power of a court to grant injunctive relief to prevent a multiplicity of groundless suits).

■ However, the signing of an order dismissing a case, not the filing of a notice of nonsuit, is the starting point for determining when a trial court's plenary power expires.

Appellate timetables do not run from the date a nonsuit is filed, but rather from the date the trial court signs an order of dismissal. *See Farmer v. Ben E. Keith Co.*, 907 S.W.2d 495, 496 (Tex.1995) ("The appellate timetable does not commence to run other than by a signed, written order, even when the signing of such an order is purely ministerial."); *see also Shadowbrook Apartments v. Abu–Ahmad*, 783 S.W.2d 210, 211 (Tex. 1990); TEX.R. CIV. P. 329b(d)..

■ While we have recognized that generally, a trial court has no discretion to refuse to sign an order of dismissal once notice of a nonsuit has been filed, this broad principle necessarily has exceptions. Rule 162 expressly states that a dismissal under the rule "shall have no effect on any motion for sanctions, attorney's fees or other costs pending at the time of dismissal." TEX.R. CIV. P. 162. Further, a trial court is free to "impose[ ] sanctions while it retain[s] plenary jurisdiction" even when a motion for sanctions is filed after the notice of nonsuit is filed. *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596 (Tex.1996). It is only after plenary jurisdiction has expired that a trial court may not sanction counsel for pre-judgment conduct. *Id.* at 596 & n. 2; *see also BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 840 (Tex.1990) (right to nonsuit is absolute unless there is a pending claim for affirmative relief or a motion for sanctions).

■ The removal to federal court placed this case in an unusual procedural posture. On the date of removal, Judge Bennett had not signed an order of dismissal, but he would have been well within his authority to defer signing such an order pending the disposition of the sanctions issues. A trial court has the discretion to · allow a reasonable amount of time for holding a hearing on sanctions and, once the question of sanctions has been resolved, to then sign an order of dismissal. The court of appeals erred when it held otherwise. Judge Bennett would have had plenary power when he signed the order imposing sanctions but for the removal.

The opinion of the court of appeals is devoid of any mention of removal and erroneously focused only on Judge Bennett's plena-

ry power in the context of a nonsuit. The court of appeals should have considered what authority Judge Bennett had to enter an order sanctioning counsel for pre-removal conduct after the case had been removed and after the federal court had dismissed the case at the request of plaintiffs. We turn to that issue.

## III

Federal law provides that once a case is removed to federal court "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d). Section 1446(d) clearly prohibits state courts from taking any action on the merits of the removed case. *See, e.g., Murray v. Ford Motor Co.*, 770 F.2d 461, 463 (5th Cir.1985) (holding that a state trial court had no power to set aside a default judgment after the case had been removed). However, whether section 1446(d) permits state courts to sanction counsel after removal for pre-removal conduct when such sanctions have no effect on the merits of the removed case is another matter. We have found few cases or commentators that directly address the question. *See, e.g., Stroud v. VBFSB Holding Corp.*, 917 S.W.2d 75, 83–84 (Tex.App.—San Antonio 1996, writ denied) (holding that the trial court had no jurisdiction to sanction counsel for *post*-removal conduct); *Jackson v. State*, 337 So.2d 1281, 1283 (Ala.1976) ("We need not decide ... whether [removal to federal court] divested the state court of power to cite appellant [a lawyer] for contempt."); 14A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3737 (2d ed. 1985 & Supp.1997) (citing only cases holding that state courts are powerless to take any action with respect to the merits of the removed action unless and until remanded); 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 107.31[2] (3d ed.1997) (same).

At least one Texas state court has held that removal of the underlying case did not foreclose consideration of a pending motion for contempt and sanctions against a party to the litigation and that party's counsel. *Stewart Title Co. v. Street*, 731 S.W.2d 737, 739–40 (Tex.App.—Fort Worth 1987, orig. proceed-

ing). The court of appeals in *Stewart* concluded that although the trial court had no jurisdiction after removal to strike the party's pleadings as punishment for contempt, the trial court did have jurisdiction to issue an order directing counsel to show cause why he should not be punished for contempt. *Id.* We neither approve nor disapprove of this holding to the extent that it permits attorneys to be sanctioned for filing a petition for removal. That issue is not before us.

We do, however, find guidance in federal caselaw which holds that federal courts retain jurisdiction even after a case has been remanded to state court to sanction counsel for post-removal conduct that occurred in federal court. *See Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 445–46 (9th Cir.1992). The same principle applies to suits originally filed in federal court; the trial court retains jurisdiction to sanction counsel for his or her conduct during the proceedings even after the plaintiff files a notice of dismissal, *see Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990), and after an action is dismissed for want of jurisdiction, *see id.* at 395, 110 S.Ct. at 2455–56 (citing 28 U.S.C. § 1919). In *Willy v. Coastal Corp.*, 503 U.S. 131, 137, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992), the United States Supreme Court relied upon its holding in *Cooter* and recognized that sanctioning counsel for their conduct is collateral to the merits of the underlying case. 503 U.S. at 137–38, 112 S.Ct. at 1080–81. Sanctioning counsel is "not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter*, 496 U.S. at 396, 110 S.Ct. at 2456.

■ Judge Bennett found that plaintiffs' counsel had abused the judicial process. He imposed sanctions on the lawyers, not on their clients. Judge Bennett's determinations had no bearing whatsoever on the merits of the claims that were removed to federal court. Nor did his rulings interfere with or tend to have any chilling effect on the pursuit of jurisdiction in the federal system.

We are also mindful that abuse of the state judicial process may be placed beyond the reach of any court, state or federal, were we to conclude that state courts should not go forward after removal with an adjudication of sanctions for pre-removal conduct of counsel. That is because federal courts have no authority to impose sanctions for pre-removal conduct that occurred in state court. *See Willy v. Coastal Corp.,* 915 F.2d 965, 968 n. 8 (5th Cir.1990), *aff'd,* 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992).

From our review of federal precedent and in light of the practical ramifications, we conclude that state courts retain jurisdiction after removal of a case to federal court to sanction lawyers for pre-removal conduct so long as the sanction does not operate upon the merits of the underlying action. Accordingly, the court of appeals erred in concluding that Judge Bennett did not have jurisdiction to consider the imposition of sanctions in this case.

The final issue is whether the imposition of sanctions was appropriate under the facts of this case.

### IV

Counsel for the plaintiffs contend that the trial court abused its discretion by sanctioning them. The court of appeals agreed, writing in dicta that even if Judge Bennett had plenary jurisdiction, he had no authority to impose sanctions *sua sponte.* 925 S.W.2d at 341–42. We disagree.

Courts possess inherent power to discipline an attorney's behavior. *See Lawrence v. Kohl,* 853 S.W.2d 697, 700 (Tex. App.—Houston [1st Dist.] 1993, no writ) (holding that trial courts have the power to sanction parties for bad faith abuse of the judicial process not covered by rule or statute); *Kutch v. Del Mar College,* 831 S.W.2d 506, 509–10 (Tex.App.—Corpus Christi 1992, no writ) (same); *see also Public Util. Comm'n v. Cofer,* 754 S.W.2d 121, 124 (Tex.

1988) (recognizing the inherent power of courts to ensure an adversarial proceeding); *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398–99 (Tex.1979) (recognizing that a court has inherent power "which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity"). A court has the inherent power to impose sanctions on its own motion in an appropriate case.[5]

Plaintiffs' counsel admitted that the filing scheme was designed to ensure adjudication by a particular judge. The practice of filing multiple cases without intent to prosecute most of them, in search of a court perceived to be sympathetic, subverts random assignment procedures that are in place in many multi-court counties and is an abuse of the judicial process. This type of conduct, if tolerated, breeds disrespect for and threatens the integrity of our judicial system.

The power to sanction is of course limited by the due process clause of the United States Constitution, as urged by plaintiffs' counsel. The lawyers sanctioned in this case cannot deny that they were fully aware of the purposes of the random assignment system. They intentionally attempted to circumvent those purposes. Counsel were given notice of the court's intention to consider sanctions and were given an opportunity to respond. Due process was not violated in this case. The court of appeals abused its discretion in directing Judge Bennett to vacate the order sanctioning counsel in this case.

\* \* \* \* \*

Accordingly, the Court grants Relators' motion for leave to file, and, without hearing oral argument, conditionally grants the writ of mandamus. Tex.R.App. P. 59.1. The writ

---

**5.** For suits commenced on or after September 1, 1995, the Texas Civil Practice and Remedies Code authorizes a trial court to impose sanctions on its own initiative for certain conduct if the show cause order is issued before a voluntary dismissal or settlement of claims. *See* Tex Civ. Prac. & Rem.Code §§ 10.002(b), 10.004(e) & historical notes [Act of May 4, 1995, 74th Leg., R.S., ch. 137, § 2, 1995 Tex. Gen. Laws 977, 978]. We need not decide whether the conduct in this case is covered by these statutes.

will issue only if the court of appeals fails to vacate its writ of mandamus.