TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00005-CV






Robbins Chevrolet Company and Landmark Chevrolet Corporation, Appellants




v.




Motor Vehicle Board and Motor Vehicle Division, Texas Department of Transportation;


Austin Chevrolet, Inc., d/b/a Munday/Geo; and Chevrolet Motor Division,


General Motors Corporation, Appellees







DIRECT APPEAL PURSUANT TO THE TEXAS MOTOR VEHICLE COMMISSION CODE







 Munday, a Chevrolet/Geo dealership on FM 1960 in Houston, filed an application
with the Motor Vehicle Board to relocate the dealership less than a mile away from its original
site. Robbins, a Chevrolet dealership on Highway 59 in Humble, filed a notice protesting
Munday's application to relocate. When the legislature rescinded the right to protest dealership
relocations under these circumstances, Munday withdrew its application to relocate and the Motor
Vehicle Board dismissed the application without prejudice. Robbins and Landmark, another
Chevrolet dealership that joined Robbins's protest, raise three points of error appealing the
Board's final order. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND

 Appellee, Munday Chevrolet/Geo ("Munday") is an automobile dealership located
on FM 1960 in northwest Houston. In December 1996, Munday filed an application with the
Motor Vehicle Board of the Texas Department of Transportation (the "Board") to relocate its
dealership to Interstate 45, less than one mile away. Appellant, Robbins Chevrolet Company
("Robbins"), filed a protest pursuant to section 4.06(e) of the Texas Motor Vehicle Commission
Code (the "Motor Vehicle Code"). Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 4.06(e), (West
Supp. 1996, since amended). The administrative law judge ("ALJ") granted Chevrolet Motor
Division of General Motors Corporation's ("GM") motion to intervene on behalf of Munday on
March 6, 1997, and granted Landmark Chevrolet Corporation's ("Landmark") motion to intervene
on behalf of Robbins on March 21. (1)

 On May 22, the Texas Senate added a provision to House Bill 1595 amending
section 4.06(e) of the Motor Vehicle Code to specify that the relocation of a dealership is not
subject to protest by a franchised dealer "if the proposed relocation site is not further than one
mile from the site from which the dealership is being relocated." Tex. H.B. 1595, 75th Leg.,
R.S., ch. 639, § 26 (since codified at Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 4.06(e)(1) (West
Supp. 1999)). Six days later, Munday withdrew its application. Subsequently, Robbins filed a
motion requesting that the ALJ recommend to the Board either a denial of Munday's application
to relocate or a dismissal of the application with prejudice.

 At a hearing before the ALJ on June 10, Robbins argued for a dismissal of
Munday's application with prejudice. The next day, Governor Bush signed H.B. 1595, putting
the amended version of section 4.06(e) into effect. Twelve days later, the ALJ filed a proposal
for decision with the Board recommending that Munday's application to relocate its dealership be
dismissed without prejudice. On August 7, the Board unanimously voted to adopt the proposal
and issued a final order dismissing Munday's application without prejudice.

 After Robbins appealed the Board's final order, Munday removed the appeal from
the district court to this Court pursuant to section 7.01(a) of the Motor Vehicle Code. Tex. Motor
Vehicle Commission Code Ann. § 7.01 (West Supp. 1999). Robbins sets out three points of error
addressing the same issue: whether the Board erred in refusing to dismiss Munday's application
with prejudice. Stated in more general terms, the question is whether an agency may dismiss
without prejudice a withdrawn license application when the following sequence of events occurs: 
(1) an opponent files a notice of protest pursuant to statutory authority; (2) the legislature rescinds
the statutory right of protest; and (3) the agency then renders a final decision. We will address
Robbins's three points of error together.


DISCUSSIONRobbins Has No Vested or Substantive Right to Protest Munday's Application

 Munday argues that Robbins has no vested or substantive right to protest its
application because the right to protest another entity's licensing process is a procedural right
granted by statute. At the time H.B. 1595 went into effect on June 11, the Board had not made
a final decision. Because H.B. 1595 rescinded the right to protest before a final decision had been
made, Robbins had no vested right. Robbins responds that the Code Construction Act applies and
that a savings provision preserves its right to protest because the right had been "previously
acquired, accrued, accorded, or incurred" before the adoption of H.B. 1595 removed that right. 
Tex. Gov't Code Ann. § 311.0031 (West Supp. 1999). We hold, however, that the Code
Construction Act does not apply; therefore, the savings provision does not preserve Robbins's
right to protest.

 The applicability of the Code Construction Act is set forth in section 311.002 of the
Government Code. See Tex. Gov't Code Ann. § 311.002 (West Supp. 1999). The first paragraph
of this "scope" provision specifies that the Code Construction Act applies only to "each code
enacted by the 60th or subsequent legislature as part of the state's continuing statutory revision
program." Id. § 311.002(1). Contrary to Robbins's suggestion, the fact that the Motor Vehicle
Code is referred to as a "code" does not mean that the Code Construction Act applies to it. See
Knight v. International Harvester Credit Corp., 627 S.W.2d 382, 385 (Tex. 1982); Zapata v. Ford
Motor Credit Co., 615 S.W.2d 198, 199 (Tex.), cert. denied, 454 U.S. 1074 (1981). Although
the Motor Vehicle Code was enacted in 1971 (subsequent to the 60th legislature), it is not a part
of the "continuing statutory revision program."

 The "continuing statutory revision program" referred to in section 311.002(1) is
the program established under former article 5429b-1 of the Revised Civil Statutes, now itself
recodified as section 323.007 of the Government Code. See Tex. Gov't Code Ann.
§§ 311.002(1), 323.007 (West Supp. 1999); see also PRC Kentron, Inc. v. First City Ctr. Assocs.,
762 S.W.2d 279, 284 (Tex. App.--Dallas 1988, writ denied). The purpose of this program
codifying Texas statutes on a topical basis is to "clarify and simplify the statutes and make [them]
more accessible, understandable and usable." Tex. Gov't Code Ann. § 323.007(a) (West Supp.
1999). Revisions under this program must be entirely non-substantive. See id. § 323.007(b). 
When a statute is recodified pursuant to this statutory revision program, a statement to this effect
appears in the introduction to the code. See id. ("This code is enacted as part of the state's
continuing statutory revision program, begun by the Texas Legislative Council in 1963 as directed
by the legislature in the law codified as Chapter 323 of this code."); Tex. Agric. Code Ann.
§ 1.001 (West 1995); Tex. Local Gov't Code Ann. § 1.001 (West 1988); Tex. Nat. Res. Code
Ann. § 1.001 (West 1978); Tex. Parks & Wildlife Code Ann. § 1.001 (West 1991); Tex. Util.
Code Ann. § 1.001 (West Supp. 1999); Tex. Water Code Ann. § 1.001 (West 1988). Routinely,
these recodified codes also include a section expressly applying the Code Construction Act to the
entire code. See Tex. Gov't Code Ann. § 1.002 (West 1988) ("The Code Construction Act . . .
applies to the construction of each provision in this code, except as otherwise expressly provided
by this code."); Tex. Agric. Code Ann. § 1.002 (West 1995); Tex. Local Gov't Code Ann.
§ 1.002 (West 1988); Tex. Nat. Res. Code Ann. §1.002 (West Supp. 1999); Tex. Parks &
Wildlife Code Ann. § 1.002 (West 1991); Tex. Util. Code Ann. § 1.002 (West Supp. 1998); Tex.
Water Code Ann. § 1.002 (West 1988).

 Appellants argue that the Code Construction Act applies to amendments to any
code, even when it does not govern the code itself. For this proposition appellants rely on Barbee
v. State, 432 S.W.2d 78 (Tex. Crim. App. 1968), cert. denied, 395 U.S. 924 (1969). In that case,
the court of criminal appeals stated that the Code Construction Act applies to amendments to the
Code of Criminal Procedure enacted by the 60th or subsequent legislatures; however, in so doing
it, it failed to discuss the fact that the Code of Criminal Procedure was not enacted pursuant to the
statutory revision program. See Barbee, 432 S.W.2d at 82 (op. on reh'g). Appellants urge this
Court to follow Barbee and apply the Code Construction Act to an amendment to the Motor
Vehicle Code, even though the Act is not applicable to the Code itself.

 We do not find Barbee persuasive or controlling in the present case. Although the
supreme court generally yields to the court of criminal appeals' decision in criminal matters, it has
held that amendments to civil statutes are not subject to the Code Construction Act. See Knight,
627 S.W.2d at 385. Had the legislature intended that the savings clause in the Code Construction
Act apply to the Motor Vehicle Code, it could have so specified in the code itself; however, it did
not do so. We cannot do by judicial construction what the legislature has apparently chosen not
to do by statutory enactment. See id. Furthermore, since the Code Construction Act's
applicability was not an issue on appeal in Barbee, the court's assumption was dicta and does not
bind us in this case.

 Robbins also relies on Harris County District Attorney's Office v. J.T.S., 807
S.W.2d 572, 573 (Tex. 1991). However, in J.T.S. the supreme court simply cited Barbee for the
narrow proposition that "[t]he Code Construction Act controls when interpreting the Code of
Criminal Procedure." J.T.S., 807 S.W.2d at 573. The supreme court generally follows the
construction given by the court of criminal appeals to a criminal statute. See Shrader v. Ritchey,
309 S.W.2d 812, 814 (Tex. 1958). Because the current cause is a civil matter and does not
involve the Code of Criminal Procedure, we will follow the supreme court's decision in Knight
and hold that the Code Construction Act does not apply to an amendment to the Motor Vehicle
Code.

 Robbins also argues that it had a vested right to protest and that the revised section
4.06(e) of the Motor Vehicle Code destroyed this right. To bolster its claim of a vested right,
Robbins relies on the case of State Board of Medical Examiners v. Haney, 472 S.W.2d 550 (Tex.
App.--Austin 1971, writ ref'd n.r.e.). In Haney, the Texas State Board of Medical Examiners
revoked Dr. Haney's license to practice medicine. Dr. Haney appealed the Board's order by filing
suit in district court. The Board filed a cross-action against Dr. Haney. Upon Dr. Haney's
application to register as a licensed physician, the district court enjoined the Board from enforcing
its order of cancellation. However, the suit was dismissed for want of prosecution, and neither
the Board nor Dr. Haney knew of the dismissal. The Board continued to issue a license to Dr.
Haney for two years. When the Board finally learned of the dismissal, it refused to relicense Dr.
Haney, who then filed a mandamus action in the court of appeals. See Haney, 472 S.W.2d at 551.

 After Dr. Haney filed an appeal of the Board's order in district court, a statutory
amendment changed the standard for appealing such administrative orders from de novo to
substantial evidence review. See id. Dismissal of the suit in the district court served to terminate
the Board's order of cancellation. The court of appeals held that the amendment changing the
standard of review for his appeal deprived Dr. Haney of more than a procedural right: "By
perfecting his appeal in the de novo proceeding coupled with the injunction against the
enforcement of the cancellation order, Dr. Haney acquired the valuable right to continue the
practice of medicine until a contrary determination by the District Court." Id. at 552.

 Haney is distinguishable from the instant case for two reasons. First, in Haney both
the agency's final decision and the trial court's injunction were in place before the amendment
changing the standard of review came into effect. By contrast in the present case, H.B. 1595 took
effect on June 11, before the Board rendered a final decision. Second, Dr. Haney was contesting
the revocation of his license to practice medicine; Robbins merely seeks to protest Munday's
license to relocate its dealership. Given these distinctions, we are not persuaded by Haney that
under these facts Robbins has anything more than a procedural right. "What the Legislature gives
the Legislature can take away." Patterson v. Planned Parenthood of Houston & Southeast Tex.,
Inc., 971 S.W.2d 439, 446 (Tex. 1998).


Munday Had an Absolute Right to Withdraw its Application Absent Any Pending Claim for
Affirmative Relief


 Both parties argue that the withdrawal of an application for a license is analogous
to a plaintiff's taking of a nonsuit in a civil action. In her proposal for decision adopted by the
Board, the ALJ viewed the license withdrawal as akin to a nonsuit. Assuming without deciding
that the right to take a nonsuit applies in the present circumstances, we hold that Munday had an
absolute right to withdraw its application absent any claim for affirmative relief by Robbins or
Landmark. See Hilliard v. Bennett, 925 S.W.2d 338, 340 (Tex. App.--Corpus Christi 1996)
(plaintiff has right to take nonsuit at any time until all evidence other than rebuttal evidence has
been introduced), rev'd on other grounds sub nom. In re Bennett, 960 S.W.2d 35 (Tex. 1997);
Hyundai Motor Co. v. Alvarado, 892 S.W.2d 853, 854-855 (Tex. 1995) (partial summary
judgment survives nonsuit); Aetna Cas. & Sur. Co. v. Specia, 849 S.W.2d 805, 806 (Tex. 1993)
(plaintiff's right to nonsuit firmly rooted in state's jurisprudence; Rule 162 liberally construed in
favor of right to nonsuit); BHP Petroleum Co., Inc. v. Millard, 800 S.W.2d 838, 837-38 (Tex.
1990) (plaintiff's right to nonsuit "unqualified and absolute" if defendant has made no claim for
affirmative relief); Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex. 1982) (same).

 Robbins argues that a good-faith exception to the right to nonsuit applies in this case
to prevent Munday's withdrawal. However, the good-faith exception applies only when a nonsuit
would destroy the defendant's right to claim affirmative relief. (2) See Bennett, 960 S.W.2d at 34.
In Hilliard, the court of appeals did not discuss the good-faith exception in holding that the trial
court could not sanction the plaintiffs' attorneys for filing and then nonsuiting fifteen cases arising
from the same occurrence for the express purpose of obtaining a specific court assignment. See
Hilliard, 925 S.W.2d at 339. While the supreme court reversed the court of appeals' decision in
Hilliard, it did not question a plaintiff's right to take a nonsuit or the trial court's discretion in
dismissing the case. (3) See Bennett, 960 S.W.2d at 38.

 In support of its argument, Robbins cites several cases that discuss a good-faith
limitation on the right to take a nonsuit. See Barton v. Pacific Employers Indem. Co., 532 S.W.2d
128, 129 (Tex. Civ. App.--Corpus Christi 1976, writ ref'd n.r.e.); Ex parte Helle, 477 S.W.2d
379, 383-84 (Tex. Civ. App.--Corpus Christi 1972, no writ); State v. Garza, 358 S.W.2d 749,
750-51 (Tex. Civ. App.--San Antonio 1962, no writ); J.A. Walsh & Co., Inc. v. R.B. Butler,
Inc., 260 S.W.2d 889, 890 (Tex. Civ. App.--Waco 1953, writ dism'd w.o.j.). However, the
good-faith limitation discussed in Walsh, Barton, and Helle applies only if the nonsuit movant may
destroy a defendant's right to affirmative relief. In Walsh, the defendant brought a counterclaim
against the plaintiff. The court explained the good-faith limitation on nonsuits:


[T]he privilege thus extended to the plaintiff to take a nonsuit is not entirely
without limitation. Indeed, the rule expressly provides that the action of a plaintiff
in exercising such right shall not thereby prejudice the right of an adverse party to
be heard on his claim for affirmative relief and we think the rule implies that a
plaintiff, in the exercise of such right, must act in good faith.



See Walsh, 260 S.W.2d at 890. The court found that the defendant's counterclaim was the same
as a claim for affirmative relief; therefore, the plaintiff's motion to take a nonsuit was limited by
defendant's action for affirmative relief. In this case, Robbins did not make a claim for
affirmative relief. Its protest was made purely in response to Munday's application and could not
independently support a judgment. Because Robbins did not make a claim for affirmative relief,
Walsh, Barton and Helle do not support Robbins's argument.

 Garza was a delinquency proceeding in which the court found the juvenile to be
delinquent. The prosecutor appealed the juvenile court's denial of his motion to take a nonsuit. 
The appellate court found no abuse of discretion, noting "while it is probably the general rule that
plaintiff may take a nonsuit, yet where the effect of doing so would operate to destroy the trial
court's jurisdiction, the court was justified in refusing to entertain such a motion." Garza, 358
S.W.2d at 751. However, the court based its ruling on its determination that the district attorney
had taken a nonsuit in order to deprive the juvenile court of jurisdiction. Id. No comparable
attempt to evade jurisdiction has been made in this case. In addition, although juvenile cases are
classified as civil proceedings, they are quasi-criminal in nature. See In re D.A.S., 973 S.W.2d
296, 298 (Tex. 1998). We believe that Garza is limited to its facts and is not persuasive in the
civil matter at issue here.

 For the reasons stated above, we overrule Robbins's three points of error.


CONCLUSION


 Robbins's right to protest Munday's relocation application was a procedural right
granted by statute. The legislature rescinded the right in cases where the proposed dealership
relocation is within a one-mile radius of the original location. Because there was no final agency
decision prior to the effective date of the amendment, Robbins had nothing more than a procedural
right of protest. Furthermore, the right to protest relocation of another car dealership is
fundamentally different from rights a person or entity may have pertaining to their own licensing. 
Finally, to the extent that the situation in the present case is comparable to a plaintiff's right to
take a nonsuit, that right is nearly absolute and is limited only by a defendant's claim for
affirmative relief. The Board properly dismissed Robbins's application for relocation without
prejudice. We therefore affirm the Board's order.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: March 25, 1999

Publish

1. We will refer to appellants Robbins and Landmark together as "Robbins," and refer to
appellees--Munday, the Motor Vehicle Board, and General Motors--collectively as "Munday."
2. Black's Law Dictionary defines "affirmative relief" as: "Relief, benefit, or compensation
which may be due and granted to defendant. Relief for which defendant might maintain an action
independently of plaintiff's claim and on which he might proceed to recovery, although plaintiff
abandoned his cause of action or failed to establish it." Black's Law Dictionary 56 (6th ed. 1992).
3. The trial court in Hilliard v. Bennett sanctioned the plaintiffs' attorneys, finding that they
knowingly and intentionally violated Nueces County rules that provide for the random assignment
of cases. See Hilliard v. Bennett, 925 S.W.2d 338, 340 (Tex. App.--Corpus Christi 1996), rev'd
on other grounds sub nom. In re Bennett, 960 S.W.2d 35 (Tex. 1997). The court of appeals
reversed, holding that once the nonsuit was filed, the trial court lost its jurisdiction to issue
sanctions. See Hilliard, 925 S.W.2d at 341. The supreme court reversed the court of appeals,
holding that a trial court has the discretion to allow a reasonable amount of time for holding a
hearing on sanctions and, once the question of sanctions has been resolved, to then sign an order
of dismissal. See Bennett, 960 S.W.2d at 38.


his claim for affirmative relief and we think the rule implies that a
plaintiff, in the exercise of such right, must act in good faith.



See Walsh, 260 S.W.2d at 890. The court found that the defendant's counterclaim was the same
as a claim for affirmative relief; therefore, the plaintiff's motion to take a nonsuit was limited by
defendant's action for affirmative relief. In this case, Robbins did not make a claim for
affirmative relief. Its protest was made purely in response to Munday's application and could not
independently support a judgment. Because Robbins did not make a claim for affirmative relief,
Walsh, Barton and Helle do not support Robbins's argument.

 Garza was a delinquency proceeding in which the court found the juvenile to be
delinquent. The prosecutor appealed the juvenile court's denial of his motion to take a nonsuit. 
The appellate court found no abuse of discretion, noting "while it is probably the general rule that
plaintiff may take a nonsuit, yet where the effect of doing so would operate to