Dismissed and Opinion filed November 4, 2003















Dismissed and
Opinion filed November 4, 2003.

 

 

In The

 

Fourteenth Court of Appeals

 

NO. 14-02-00519-CV

_______________

 

MARTA A. LENTINO, Appellant

V.

FROST NATIONAL BANK f/k/a CULLEN CENTER BANK AND TRUST, Appellee

____________________________________________________________________

 

NO.
14-02-00520-CV

_______________

 

DOV AVNI KAMINETZKY, Appellant

V.

FROST NATIONAL
BANK f/k/a CULLEN CENTER BANK AND TRUST, Appellee

____________________________________________________________________

 

On Appeal from
the 281st District Court

Harris County, Texas

Trial Court
Cause No. 99-09390

____________________________________________________________________

 

O P I N I O N

 

            Marta A. Lentino
and Dov Avni Kaminetzky each appeal various orders of the trial court on
numerous grounds.  Because we can find no
final judgment in the record for this case, we dismiss the appeals for lack of
jurisdiction.

 

                                                                   Background

            In 1999, Lentino
(and eight other plaintiffs)[1]
filed suit against Frost National Bank, f/k/a Cullen Center Bank and Trust
(“Frost”) for wrongfully obtaining post-judgment remedies against the property
of persons and entities that were not parties or judgment debtors in the
underlying case.  In 2000, Frost filed a
counterclaim to recover attorney’s fees against Lentino
for filing groundless pleadings.  In
February of 2001, Kaminetzky intervened, seeking
recovery of compensation from some of the plaintiffs (excluding Lentino) for services he allegedly rendered as a trustee
and investment agent.

            On May 24, 2001, Lentino
filed a motion to nonsuit all of her claims against
Frost, and the trial court entered an order granting this nonsuit
on June 1, 2001 (the “June
order”).  However, on May 28, 2001, Lentino
filed a counter-counterclaim to Frost’s counterclaim, seeking sanctions for
discovery abuse.  On June 11, 2001 (and
subsequently), Lentino supplemented her
counter-counterclaim to assert claims for fraud, misrepresentation, and
conspiracy based on facts similar to those she had alleged in her nonsuited claims.[2]  By February of 2002, among other things that
had occurred in the case, Frost had filed, and the trial court had granted, a
motion to nonsuit Frost’s claims and to strike Kaminetzky’s reintervention[3] (the
“February order”).




                                                    Existence of Final Judgment

            With exceptions not applicable here,[4] an
appeal may be taken only from a final judgment. 
Lehmann v. Har-Con Corp.,
39 S.W.3d 191, 195 (Tex.
2001).  In cases such as this, where only
one final, appealable judgment can be rendered and a
judgment has been issued without a conventional trial, the judgment is final
only if it either actually disposes of all claims and parties before the court,
or it states with unmistakable clarity that it is a final judgment.  Guajardo
v. Conwell, 46 S.W.3d 862, 863-64 (Tex. 2001); Lehmann, 39
S.W.3d at 192, 200.[5]

            Within the record of this case, we
have found various orders which dispose of discrete portions of the case but
none which either: (1) unequivocally expresses an intent to finally dispose of
the case; or (2) effects an actual disposition of all parties and claims
remaining in the case at the time the order was signed.[6]  Frost argues that either the June order
(granting the Lentinos’ motion for nonsuit) or the February order (granting Frost’s motion to nonsuit its counterclaim and strike Kaminetzky’s
reintervention) disposed of all claims and parties
remaining in the case at the time each order was entered.  However, neither order has  language purporting to dispose of any claims
or parties other than those specifically addressed, and our record does not
contain another order that had been signed: (1) by the time of the June order
disposing of Frost’s counterclaim, Kaminetzky’s
intervention,[7] or Lentino’s counter-counterclaim (filed on May 28 and later
supplemented); or (2) by the time of the February order (or thereafter)
disposing of Lentino’s counter-counterclaim.[8]

            Frost contends that Lentino’s counter-counterclaim was waived and is thus of no
effect in this case because it was filed after Lentino
had nonsuited her claims and thereby required a
motion to reinstate in order to be effective. 
In a case where no other party has a claim for affirmative relief
pending, the nonsuit of a plaintiff’s claims effects
a dismissal of the entire lawsuit and thus requires the filing of either a motion
to reinstate the action or an entirely new lawsuit in order to provide a
proceeding in which the claims can be reasserted.[9]  However, where another party has a claim
pending for affirmative relief, a nonsuit does not
bring about a dismissal of the entire case.[10]  In that event, where the lawsuit remains
active, the parties have not cited, and we have not found, any authority
requiring a former plaintiff to file a motion to reinstate or new lawsuit in
order to reassert previously nonsuited claims.             In
this case, at the time Lentino filed her nonsuit, other claims were still pending in Kaminetzky’s intervention and Frost’s counterclaim that
prevented Lentino’s nonsuit
from effecting a dismissal of the entire action.          To whatever extent, if any, Lentino’s
counter-counterclaim can be considered to have reasserted any of her nonsuited claims, it did not seek to reassert them in her
capacity as an original plaintiff in the case, but only as a
counter-plaintiff.  In that her nonsuit did not terminate the entire case and her nonsuited claims, if reasserted at all, were not sought to
be restored to their previous status, we can find no rationale (as well as no
authority) for subjecting her counter-counterclaim to a requirement to file a
motion to reinstate, i.e., as
contrasted from the rules generally governing the filing of a counterclaim.

            Even if her counter-counterclaim was
deficient for failing to file a motion to reinstate, a question would remain as
to the effect of that failure on the status of the counter-counterclaim.  If the result was that the
counter-counterclaim should thereby simply be ignored and given no effect, and
without any motion or ruling so indicating or determining, as Frost contends,
then it would seemingly have been possible for a final judgment to be entered
in the case on Frost’s claims that would not only not dispose of the
counter-counterclaim but possibly also present a res judicata bar to filing it in another action.[11]  Such an approach would also be contrary to
the general rules (and policies) that: (1) pleading defects of all kinds are
waived if not excepted to in writing and presented to the trial court;[12] and
(2) even where exceptions to pleading defects are sustained, a party must be
given an opportunity to correct the defects before suffering adverse
consequences.[13]  In the absence of clear authority dictating
such incongruous results, we decline to adopt Frost’s contention. Instead, we
conclude that there is no final judgment in our record of this case and,
accordingly, dismiss Lentino’s and Kaminetzky’s appeals for lack of jurisdiction.

 

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 

Judgment rendered and Opinion filed
November 4, 2003.

Panel consists of Justices Edelman,
Frost, and Guzman.

 











[1]           Lentino is the
only former plaintiff who is a party to this appeal.





[2]           Among other things, the counter-counterclaim alleged
that Frost misrepresented to the court in the prior action that: (1) a debt
existed, whereas Frost’s former Senior Vice President admitted that there was
no debt; and (2) Frost had standing to seize the assets when its merger with
the original lending bank had not yet been consummated.





[3]           See infra, note 7.





[4]           See Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014 (Vernon Supp.
2003).





[5]           Because the law does not require a final judgment to
be in any particular form, whether a judicial decree is a final judgment for
purposes of appeal must be determined from its language and the record in the
case.  Lehmann, 39 S.W.3d at 195.  Thus, language that the plaintiff take
nothing or that the case is dismissed shows finality if there are no other
claims by other parties.  Ritzell v. Espeche,
87 S.W.3d 536, 538 (Tex. 2002).  However, if all claims and parties have not
actually been disposed, use of a “mother hubbard”
clause or the term “final” is not sufficient to confer finality unless the
intent to finally dispose of the case is otherwise unequivocally expressed in
the words of the order.  Lehmann, 39
S.W.3d at 200-01, 203-06.





[6]           Nor have we found a severance or
other order that caused any order to become final.





[7]           The record is unclear regarding the disposition of Kaminetzky’s original intervention.  According to Lentino’s
brief, it was stricken on June 4, 2001.  Conversely, according to Frost’s brief and a
discussion reflected in the reporter’s record of the August 17, 2001 sanctions hearing, it was nonsuited
by an order signed on June 20, 2001.  However, the parties have not cited, and we
have not found, any location in our record containing an order disposing of Kaminetzky’s intervention until February of 2002.  Without a written order granting the nonsuit, the periods for the trial court’s plenary power
and appellate deadlines do not commence to run. 
See In re Bennett, 960 S.W.2d
35, 38 (Tex. 1997).





[8]           The trial court’s remarks at the hearing on February 18, 2002, reflect an understanding that all claims in the
case either had previously been nonsuited or were
being nonsuited that day.  Although Lentino
made reference to her counter-counterclaim during this hearing, she did not
explain clearly how it was still pending in the case.





[9]           Ashpole v. Mallard, 778 S.W.2d 169, 171 (Tex.
App.—Houston [1st Dist.] 1989, no writ) (recognizing that once a case is dismissed, no further action may
be had in that cause and any further
action requires either a new lawsuit or a motion to reinstate); United States Fid. & Guar. Co. v. Beuhler, 597 S.W.2d 523, 524 (Tex. Civ.
App.—Beaumont 1980, no writ) (holding that the filing of an amended pleading
following the dismissal of a case
could not vacate the order of dismissal and reinstate the case on the trial court’s docket).





[10]          See BHP Petroleum Co. v.
Millard,
800 S.W.2d 838, 840, 842 (Tex. 1990) (holding that,
because ANR’s counterclaim stated a claim for
affirmative relief, the trial court did not err in refusing to dismiss the
entire case upon BHP’s motion for nonsuit);
see also Tex. R. Civ. P. 162.





[11]          See, e.g., State and County Mut. Fire Ins. Co. v. Miller, 52 S.W.3d 693, 696 (Tex. 2001) (recognizing that
the transactional approach to res judicata
requires a defendant to bring as a counterclaim any claim arising out of the
transaction or occurrence that is the subject matter of the opposing party’s
suit).





[12]          See Tex. R. Civ. P. 90.





[13]          See Friesenhahn v. Ryan, 960 S.W.2d 656, 658 (Tex. 1998).