Vacated and Dismissed and Memorandum Opinion filed July 8,
2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00812-CV



Delores Hart, Appellant 

v.

L.B. Foster
Company, Appellee 



On Appeal from
the 270th District Court

Harris County, Texas

Trial Court
Cause No. 2007-36613



 

MEMORANDUM OPINION 

Delores Hart appeals from a final judgment granting a
declaratory judgment and attorney’s fees to L.B. Foster Company.  Foster
sought, and the trial court granted, declaratory judgment that subsequent purchasers
of property owned by Foster (the Property) would not be bound by the terms of a
prior settlement agreement between Foster and a previous owner of Hart’s
neighboring lot.  Among other arguments against the declaratory judgment, Hart
contended that Foster lost standing to maintain the action, and the trial court
lost jurisdiction over the claims, when Foster sold the Property during the
pendency of the case.  We vacate the trial court’s judgment and dismiss the
lawsuit for want of jurisdiction.

I.  Background

            In 1979, L.B.
Foster entered into a settlement agreement with several neighboring lot owners
who had sued Foster regarding Foster’s operation of a pipe-threading business
on its property.[1] 
Under the terms of the agreement, Foster agreed to certain specified
restrictions on its operations, and the neighboring lot owners agreed to
release their claims.  The releases of claims by the neighboring lot owners
were to be “covenants running with the lands and lots of Plaintiffs.” 
Furthermore, the terms of the agreement were to “bind the respective heirs,
personal representatives, successors and assigns of Foster and of Plaintiffs,
and each of them.”  Delores Hart subsequently purchased a neighboring lot from
one of the plaintiffs in the earlier action.

            In its original
petition in the present lawsuit, Foster asserted that in March 2007, it entered
into a Purchase and Sale Agreement providing for Foster to sell the Property to
R.L.R. Investments, L.L.C.[2] 
According to Foster, R.L.R. notified Foster on May 25, 2007, that it would not
proceed with the purchase unless the neighboring landowners either agreed to
amend the earlier settlement agreement or acknowledged that the agreement did
not bind subsequent purchasers of Foster’s property.  According to Foster, when
R.L.R representatives met with the landowners, the landowners declined to amend
the settlement agreement or acknowledge R.L.R.’s interpretation of it.  R.L.R.
consequently terminated the Purchase and Sale Agreement on June 12, 2007.

In its petition, Foster listed two causes of action. 
In the first, Foster sought “a declaratory judgment that the Settlement
Agreement does not bind subsequent owners of the Property.”  In support of this
request, Foster stated that a “real and justiciable controversy” existed
between the parties as to whether the terms of the settlement agreement were
binding on subsequent owners.  In its second cause of action, for slander of
title, Foster alleged that it owned an interest in the Property and that the
defendants “uttered and/or published disparaging and false statements about the
title to the Property . . . with actual malice,” and that such “statements
caused [Foster] special damages, i.e., the loss of the sale of the
Property to R.L.R.”  Foster further sought attorney’s fees under the Texas
Civil Practice and Remedies Code.

On July 19, 2007, Hart filed a counter-claim, subject
to a challenge to the trial court’s jurisdiction, seeking a declaratory
judgment that (1) the earlier settlement agreement, and judgment incorporating
it, restrict subsequent owners of the Property, and (2) in the alternative, the
Property is encumbered by an equitable servitude for the benefit of Hart’s
neighboring lot.  On December 17, 2007, Foster filed a motion for summary
judgment again detailing the history of the prior settlement agreement, the
Purchase and Sale Agreement between Foster and R.L.R., and R.L.R.’s termination
of that agreement.  In the motion, Foster sought both a declaration that the
settlement agreement would not bind subsequent owners of the Property and
attorney’s fees.  It did not seek summary judgment on either its
slander-of-title cause of action or Hart’s counterclaim.  The trial court
granted the motion for partial summary judgment on February 20, 2008, holding
specifically that “[t]he Settlement Agreement . . . does not bind subsequent
purchasers of [Foster’s] Property,” and that Foster was entitled to attorney’s
fees.[3] 
The order did not contain any language suggesting that it should be considered
a final judgment.

On March 3, 2008, Foster conveyed the Property to
CCI-B Langfield I L.L.C. (“CCI”).  The warranty deed executed by Foster states
that

Grantee [CCI] . . . acknowledges and agrees that . . .
Grantor [Foster] does not make and hereby specifically disclaims any
representation, warranties, promises, covenants, agreements or guarantees of
any kind or character whatsoever, . . . as to, concerning or with respect to: .
. . (G) the enforceability or effect of any legal, contractual or other rights
or obligations pertaining to the property . . . .

Attached as an exhibit to the
deed was a list of “Exceptions and Encumbrances.”  Included in this list are a
lease agreement, in which CCI apparently leased the premises back to Foster,
and a release and settlement agreement “as affected by order, dated February
20, 2008,” which appears to be the prior settlement agreement between Foster
and the neighboring lot owners.

The trial court granted Foster’s motion for nonsuit
of its slander-of-title claim on May 14, 2008.  Like the partial summary
judgment, this order also does not contain any finality language.  On May 28,
2008, the trial court entered its final judgment in the case.  In the judgment,
the court referenced the prior grant of summary judgment and the nonsuit of the
slander-of-title claim.  The court also included language of finality, to wit: 
“[A]ll relief not expressly granted in this judgment is denied.  This finally
disposes of all parties and all claims and is appealable.”

It is uncertain whether the trial court disposed of
Hart’s counterclaim in the final judgment or severed it into a separate action
with a separate cause number.  Although the trial court’s docket sheet reflects
that a motion for severance was granted on the day that the final judgment was
signed, the record does not otherwise reflect that a severance was requested or
granted.  There is no question, however, that the May 28 judgment was final and
appealable.  It is therefore clear that either the counterclaim was severed or
it was disposed of in the May 28 final judgment.

From the beginning of the case below, Hart alleged
that the trial court lacked jurisdiction to consider Foster’s lawsuit because
there was no genuine controversy between the parties.  In her Motion for New
Trial and Motion for Rehearing, Hart once again argued that there was no live
controversy between the parties and specifically pointed out that Foster had
sold the Property to CCI.  To this pleading, Hart attached a copy of the
warranty deed conveying the Property from Foster to CCI.  In a post-judgment
Objection to Jurisdiction, Hart further specifically alleged that having sold
the Property, Foster lacked standing to maintain the lawsuit.  These
post-judgment motions were apparently overruled by operation of law, since the
record does not contain any specific rulings on them.

In its brief, Foster alleges that this court does not
have jurisdiction to consider Hart’s appeal because her motion for new trial
was not timely filed.  In her briefing, Hart argues, among other things, that
Foster lost standing to maintain the action, and the trial court consequently
lost jurisdiction, when Foster sold the Property during the pendency of the
case.  

II.  Appellate Jurisdiction

            Foster premises
its argument that this court lacks appellate jurisdiction on the assertion that
Hart failed to timely file her motion for new trial and thus her subsequent
notice of appeal was also untimely.  See generally Tex. R. Civ. P.
329b(a) (providing that a motion for new trial must be filed within thirty days
after the judgment complained of was signed).  More specifically, Foster
contends that the trial court’s order granting nonsuit of Foster’s
slander-of-title claim was effectively the final judgment, and started
appellate timetables, because it disposed of all remaining claims existing
after the partial summary judgment had been granted, citing In re Bennett,
960 S.W.2d 35 (Tex. 1997), et al.

In Bennett, the court explained that where no
affirmative relief has been requested by any defendant, appellate timetables
would start with a trial court’s dismissal of a case pursuant to the
plaintiff’s notice of nonsuit.  Id. at 38.  This principle is not
applicable in the present case because defendant Hart had an outstanding
request for affirmative relief.  In her counter-claim, Hart sought a
declaratory judgment that (1) the prior settlement agreement applied to
subsequent owners of the Property, and (2) in the alternative, the Property is
encumbered by an equitable servitude for the benefit of Hart’s neighboring lot. 
Although the first declaratory judgment request was arguably disposed of by the
grant of partial summary judgment favoring Foster, the second request, for an
equitable servitude, was not addressed in the summary judgment.  Neither
Foster’s motion nor the court’s order mentions Hart’s counterclaim.  Moreover,
the court’s order granting the nonsuit does not include any language indicating
an intention to dispose of all remaining claims and parties.  The argument that
the counterclaim was disposed of by either the summary judgment order or the
order of nonsuit is also belied by the fact that Foster subsequently sought,
and the trial court granted, a final judgment discussing the prior two orders
and including language of finality, disposing “of all parties and all claims.” 
Foster does not dispute that if the order of nonsuit was not effectively a
final judgment then Hart’s motion for new trial and notice of appeal were
timely.  Because the trial court’s nonsuit order was not a final judgment,
Foster’s argument that we lack jurisdiction because Hart filed her motion for
new trial too late is without merit.  

III.  Standing

A.  Standards of Review

            In both the trial
court and on appeal, Hart has challenged whether Foster—having sold the
Property and nonsuited its slander-of-title cause of action—has retained
standing to pursue its remaining declaratory judgment action.[4]  Standing
is a constitutional prerequisite for a party to bring a lawsuit.  Tex. Ass’n
of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993).  A court
has no jurisdiction over a claim pursued by a plaintiff who lacks standing to
assert the claim.  DaimlerChrysler Corp. v. Inman, 252 S.W.3d 299, 304
(Tex. 2008).  When a plaintiff lacks standing, the proper disposition is to
dismiss the lawsuit.  Id.  The test for standing requires that there be
a real controversy between the parties which will actually be determined by the
judicial declaration sought.  See Nootsie, Ltd. v. Williamson County
Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996).  Without breach of a
legal right belonging to the plaintiff, no cause of action can accrue to his
benefit.  See Nobles v. Marcus, 533 S.W.2d 923, 927 (Tex. 1976).  “The
issue of standing focuses on whether a party has a sufficient relationship with
the lawsuit so as to have a ‘justiciable interest’ in its outcome . . . .”  Austin
Nursing Center, Inc. v. Lovato, 171 S.W.3d 845, 848 (Tex. 2005).  For a
controversy to be justiciable, there must be a real controversy between the
parties that will actually be resolved by the judicial relief sought.  State
Bar of Texas v. Gomez, 891 S.W.2d 243, 245 (Tex. 1994).

We review a trial court’s ruling on jurisdiction de
novo.  State Dep’t of Highways & Pub. Transp. v. Gonzalez, 82 S.W.3d
322, 327 (Tex. 2002).  In such a review, we must determine whether facts have
been alleged that affirmatively demonstrate jurisdiction.  City of Waco v.
Lopez, 259 S.W.3d 147, 150 (Tex. 2008).  In doing so, we construe the
pleadings liberally in favor of the plaintiff.  Id.

When a defendant challenges the existence of material
facts supporting jurisdiction, the court must consider the relevant evidence
submitted by the parties.  Texas Department of Parks and Wildlife v. Miranda,
133 S.W.3d 217, 227 (Tex. 2004).  If the evidence is undisputed or fails to
raise a question of fact, the court should rule on the plea as a matter of
law.  Id. at 228.  After a defendant asserts, and supports with
evidence, that the court lacks subject matter jurisdiction, the plaintiff must
show the existence of a disputed fact issue in order to avoid dismissal for
want of jurisdiction.  Id.  The standard of review for such
jurisdictional disputes “generally mirrors that of a [traditional] summary
judgment.”  Id.

The question of a party’s standing can be raised at
any time, even on appeal.  See, e.g., Bailey v. Barnhart Interest, Inc.,
287 S.W.3d 906, 913-14 (Tex. App.—Houston [14th Dist.] 2009, no pet.).  In
order to maintain its claims, a party must maintain standing throughout the
proceedings, even during the pendency of the appeal.  See, e.g.,Williams v.
Lara, 52 S.W.3d 171, 184 (Tex. 2001); Trulock v. City of Duncanville,
277 S.W.3d 920, 924 (Tex. App.—Dallas 2009, no pet.).

B.  Analysis

Hart presented evidence to the trial court that
Foster conveyed the Property to CCI on March 8, 2008.  The record reflects that
Foster nonsuited its slander-of-title cause of action, which alleged special
damages for the loss of the sale to R.L.R.  According to Hart, after Foster
sold the Property and nonsuited its slander-of-title cause of action, it no
longer had standing to pursue its declaratory judgment action. 

Foster does not dispute that it sold the Property to
CCI and nonsuited its slander-of-title claim.  Instead, in its brief and in
oral argument, Foster asserted that it maintained standing because (1) the
continued existence of Hart’s severed counterclaim meant that there was still a
controversy between the parties; (2) Foster still possesses the Property as
leaseholder, and thus the parties have an ongoing relationship; (3) Foster may
one day want to transfer the lease; and (4) if Foster were to regain title to
the Property at some point, the controversy would arise again.[5]  

First, even if we assume that Hart’s counterclaim was
severed and continues as a separate, yet unresolved action, such status would
not necessarily provide standing for Foster on appeal.  Foster has not cited
any authority, and we are aware of none, providing that the mere existence of
one lawsuit (Hart’s severed counterclaim) creates standing in a separate
lawsuit (Foster’s declaratory judgment action).  Moreover, Foster’s argument
presupposes that it is still a proper party to the counterclaim.  Having sold
the property on which an equitable servitude is sought, Foster appears unlikely
to be the proper defendant in the allegedly severed action.   Even if it were a
proper defendant, the mere existence of Hart’s lawsuit does not give Foster
standing to bring its claims in this lawsuit.

Second, Foster alleges that because it maintains a
leasehold interest in the Property, the parties have an ongoing relationship
that somehow gives it standing on the issue of whether subsequent owners are
restricted by the settlement agreement.  Foster has not explained how such a
continuing relationship equates to standing in the present case.  Indeed, in
oral argument, Foster acknowledged that it was bound to the terms of the
settlement agreement in connection with its operations on the property,
regardless of who owned the property.

Foster argues that it may one day wish to transfer
the lease, at which point the question of whether subsequent owners or users of
the property would be bound by the settlement agreement might reemerge.  Yet
there is no indication that Foster has any intention of transferring the lease
and no showing that it even had the authority to do so.  Such a speculative
future event does not create a real and live controversy between the parties.  See
Gomez, 891 S.W.2d at 245.[6]

Lastly, Foster raises the possibility that one day it
could regain title to the Property and attempt to sell it once again.  Foster’s
scenario contemplates that CCI would default on its mortgage and Foster, as
mortgagee, would foreclose.  Foster offers no support for the likelihood of
this highly speculative occurrence.  Its mere possibility does not create a
real and live controversy between the parties.  See id.  Just because a
party might possibly have title to a particular property in the future does not,
in and of itself, invest that party with current standing to assert claims
related to the property.

C.  Conclusion

Foster’s initial standing in the present lawsuit was
based on its assertions that (1) it was attempting to sell the Property and
required resolution regarding the effect of the settlement agreement on
subsequent purchasers, and (2) Hart and the other defendants made statements
regarding the Property which resulted in loss of the sale to R.L.R.  Having
sold the Property and nonsuited its slander-of-title claim, Foster no longer
has standing to maintain this suit.

Hart’s attack on Foster’s standing challenged the
existence of jurisdictional facts.  It is uncontested that Foster sold the
Property during the pendency of the case.  Therefore, the evidence did not
raise a fact question regarding the jurisdictional issue but instead
conclusively established that Foster does not have standing.  See Miranda,
133 S.W.3d at 227-28.  Foster has not suggested any grounds for standing, and
we discern none, that would merit an opportunity to amend its pleadings.  See
id. at 228, 231 (declining to give party opportunity to replead where facts
did not establish any basis for subject matter jurisdiction).

We
vacate the trial court’s judgment and dismiss the lawsuit for want of
jurisdiction.       

                                                                                                                                                                                                                        

            /s/    Adele Hedges

                 Chief Justice

 

Panel consists of Chief Justice Hedges and Justices
Seymore and Brown.

 

 









[1]
The plaintiffs’ claims in the prior action
apparently revolved around noise levels on Foster’s property, although because
the record in the present case does not contain the pleadings from the prior
action, it is impossible to discern the exact nature of the claims made and
subsequently released.





[2]
Foster named twelve defendants in its Original
Petition, and the trial court entered summary judgment against all twelve.  Only
defendant Hart brings the present appeal.





[3]
In the same order, the trial court denied the motion for summary judgment of
certain of the defendants, not including Hart.





[4]
On appeal, Hart listed seventeen issues.  Of these, issues 1, 2, 4, 5, 6, 15,
and 16 appear to address jurisdictional matters.  Issue 16 specifically
mentions standing.





[5]
In response to Hart’s post-judgment pleadings, Foster argued only that the
summary judgment was proper and that all of the issues raised had either been
previously considered and rejected by the court, were irrelevant or immaterial,
or had been waived by failure to timely raise them.  We have explained that
jurisdictional issues can be raised at any time, even on appeal.  Furthermore, 
the issues were neither irrelevant nor immaterial.  The extent to which the
court had previously ruled on the issues is not a ground for rejecting them on
appeal.





[6]
In its brief, Foster argued that the trial court did not lose subject matter
jurisdiction under the mootness doctrine because the issues in this case are
capable of repetition.  However, as explained in this opinion, the trial court
lost jurisdiction because Foster lost standing when it sold the Property, not
because the issues themselves became moot.  Furthermore, the “capable of
repetition, yet evading review” exception to the mootness doctrine is generally
limited in its application to government action.  See Truluck, 277
S.W.3d at 924.  Even if it applied in the present context, the possibility that
Foster might at some future point attempt to sublease or transfer the lease to
the property is too speculative to invest Foster with standing at the present
time.  See Williams, 52 S.W.3d at 184 (rejecting argument that parties
had standing where possibility of reoccurrence of complained of conduct was
speculative).