Charles (Bill) WHITE, Appellant,

v.

James R. BATH, Appellee.

No. B14–91–00260–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 20, 1992.

Rehearing Denied March 26, 1992.

W. Briscoe Swan, Houston, for appellant.

Kem T. Frost, Houston, for appellee.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION

JUNELL, Justice.

This is a suit for dissolution of a partnership and claims for damages. After reviewing the decision of a special master, the trial court struck appellant's pleadings and rendered a default judgment for appellee. The basis for the court's decision was abuse of the discovery process by the appellant. We affirm.

In 1980, White, appellant, and Bath, appellee, formed a partnership for participation in real estate transactions. Individual joint ventures were formed for each real estate project; however all ventures were governed by a Master Partnership Agreement. White and Bath had joint management and control of the partnership, but White was in charge of the day-to-day operation of the partnership. The relationship between the partners began to deteriorate, and in September of 1986, Bath sued White for recision or dissolution of the partnership and for damages. In February of 1987, White counter-claimed asserting several claims against Bath.

In September of 1987, Bath made an initial request for production. Bath eventually made many oral and written requests for production. White produced

certain documents sporadically and promised full compliance. This was never done. Bath filed two motions to compel and/or for sanctions. After each motion, White promised to comply with the discovery requests if Bath would forego any court action on these motions. White failed to keep his promises, and Bath filed a third motion to compel and/or for sanctions. The trial court set a hearing for February 20, 1989. At this hearing, White's attorney stated to the court that all requested documents in White's possession had been produced or did not exist. This came as a surprise to Bath because White had led him to believe that other documents did exist and would be forthcoming. Because of the overabundance of discovery problems in the case, the trial court appointed a special master to oversee all discovery disputes between the parties. The trial court gave the master full power to hear discovery requests and determine if any discovery abuses existed.

On March 3, 1989, the master held a conference. At this conference it became clear that White had not produced all of the requested documents. The master ordered White to produce all of the requested documents and warned the parties that any abuse of the discovery process would be dealt with harshly through sanctions. For approximately seven months, the master conferred with the parties and monitored the discovery process. After the master had ordered White to produce, White executed an affidavit swearing that all requested documents in his possession had been produced or did not exist. However, after execution of this affidavit, White produced over ten thousand other documents. This prompted Bath to supplement his third motion for sanctions.

After this motion was brought to the master's attention, the master conducted a full investigation of White's alleged discovery abuses. The master requested both sides to submit affidavits and written arguments in response to the pending motion for sanctions. After considering all of the submitted evidence, the master issued a final ruling on October 6, 1989. In the ruling, the master struck White's pleadings including White's general denial, affirmative defenses and counterclaims. The master further ordered White to pay $5,000 to Bath as compensation for attorney's fees and costs incurred due to White's sanctionable conduct. The ruling was based on numerous discovery violations which occurred over an extended period of time.

After the master issued the ruling, White filed a motion asking the trial court to review the matter *de novo* and set aside the master's findings. A hearing was held on October 19, 1989, before the trial court. At the hearing the trial court castigated White for failure to cooperate in the discovery process. The trial court deferred ruling until a full hearing was conducted. An evidentiary hearing on White's motion to set aside the master's findings began on June 18, 1990, and was completed on July 2, 1990. The parties were allowed to present evidence, call witnesses, cross-examine the other side's witnesses and present arguments to the court. After considering the evidence and arguments of counsel, the trial court adopted and affirmed the master's findings in their entirety. The court struck White's pleadings, entered a default judgment in favor of Bath and awarded Bath attorney's fees, costs, and the $5,000 that had been awarded by the master. White appeals the decision of the trial court.

In his first point of error appellant alleges the trial court abused its discretion in striking his pleadings and entering a default judgment for Bath based on Bath's motions for sanctions.

 A trial court may sanction any party who perpetrates discovery abuses. TEX.R.CIV.P. 215. It is within the trial court's discretion to impose discovery sanctions and any sanction imposed will be set aside on appeal only upon a showing that the trial court clearly abused its discretion. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986). Further, the trial court is given the broadest discretion in imposing such sanctions and in choosing the appropriate sanctions. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985), *cert. denied*, 476 U.S.

1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Tate v. Commodore County Mut. Ins. Co.,* 767 S.W.2d 219 (Tex.App.—Dallas 1989, writ denied). The trial court is not limited to considering only the specific violation for which sanctions are finally imposed, but may consider everything that has occurred during the history of the litigation. *Downer,* 701 S.W.2d at 241. The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles. In other words, the test is whether the trial court acted arbitrarily or unreasonably. *Id.* at 242. The fact that an appellate court may have decided the matter differently is insufficient to show a clear abuse of discretion. *Id.* A trial court abuses its discretion when the sanctions imposed do not further one of the purposes that discovery sanctions were intended to further: (1) to secure broad compliance with the discovery rules; (2) to deter other litigants from violating the discovery rules; and (3) to punish parties who violate the discovery rules. *Bodnow Corp.,* 721 S.W.2d at 840. If the sanction satisfies one of these purposes, the trial court has not abused its discretion. *Garcia Distrib., Inc. v. Fedders Air Conditioning, USA, Inc.,* 773 S.W.2d 802, 806–807 (Tex.App.—San Antonio 1989, writ denied).

In this case, the record is replete with evidence of White's failure to comply with the discovery rules. This is borne out by the fact that the trial court felt it necessary to appoint a special master to handle the discovery problems. White would state to the trial court that every item had been produced, and then would produce more documents. After the master was appointed, at cost to both parties, and ordered White to produce all requested documents, White executed a sworn affidavit to the master stating that all documents had been produced, then later produced over ten thousand more documents. White also failed to appear for a scheduled deposition as ordered, even though he did appear later. The abuses committed by White were not isolated; White's conduct persisted over a two-year period of time. The record contains no indication that the master or the trial court was arbitrary or capricious in their actions. In fact, it appears to this court that White was given numerous chances to correct his discovery abuses before the sanctions were imposed. Thus, we hold the trial court did not abuse its discretion in imposing the sanctions. Appellant's first point of error is overruled.

In points of error two, three, four, five, six, seven and ten, appellant cites no authority in support of the arguments that appear under these points. Nor does appellant argue that there is no authority to be found in Texas law as to these points. In fact, it is generous to say that these seven points contain arguments. For the most part the scant discussion under these seven points of error consists of conclusory statements and questions. Point of error seven contains absolutely no argument and no authority; the point is merely stated in the heading. Points of error must be supported by argument and authorities, and if not so supported the points are waived. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 934 (Tex.1983); *King v. Graham Holding Co., Inc.,* 762 S.W.2d 296, 298 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Bayliss v. Cernock,* 773 S.W.2d 384, 387 (Tex.App.—Houston [14th Dist.] 1989, writ denied). Appellant's second, third, fourth, fifth, sixth, seventh and tenth points of error are overruled.

In his eighth point of error appellant contends the trial court erred in overruling his objection to an answer given by Bath's counsel concerning statements made by White during White's deposition. White's counsel objected on the grounds that such testimony violated the best evidence rule.

During the hearing held on June 18, 1990, Bath's counsel, Kem Frost, testified concerning what White had said at his deposition. White's attorney objected citing the best evidence rule. The trial court determined that Ms. Frost should be allowed to paraphrase what occurred at the deposition since she was the one examining White at the deposition. The court informed White's counsel that if he believed Ms. Frost's testimony to be inaccurate, he

could bring it to the court's attention. White's counsel responded:

I have no problem with that procedure, Your Honor, except that that is going to require me to offer Mr. White's deposition in this hearing. I don't have its here with me, but I will have to offer it.

The court informed White's counsel that he would allow the deposition to be offered. Ms. Frost then continued her testimony, making further statements about what White had said at his deposition. There were no further objections by White's counsel, nor did he ever offer the deposition into evidence. It is clear that White has waived any error concerning this testimony. White's counsel agreed that Ms. Frost could summarize White's deposition testimony.

 Even if the objection was not waived, the best evidence rule is inapplicable in this case. The best evidence rule provides that the only competent evidence to prove the contents of a document is the document itself. *Aetna Ins. Co. v. Klein*, 160 Tex. 61, 325 S.W.2d 376 (1959); *Prudential Ins. Co. of America, Inc. v. Black*, 572 S.W.2d 379, 380 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ). As this court has previously held, the key phrase is "to prove the contents," because only when one seeks to prove the contents of a document that the best evidence rule applies. *Black*, 572 S.W.2d at 380. When the document and its contents are only collaterally related to the issues in the case, the best evidence rule does not apply. *Id.* Here, the deposition and its contents were only collaterally related to the controlling issue of whether White had violated the discovery rules. The aim was not to prove the contents of the deposition, but rather to determine whether any discovery abuses had occurred. Therefore, the best evidence rule was not applicable. Appellant's eighth point of error is overruled.

 In point of error nine appellant alleges trial court erred in sustaining Bath's objection to testimony by White's former counsel that there was an agreement between counsel to hold discovery in abeyance. Bath's counsel objected stating that TEX.R.CIV.P. 11 prevented testimony regarding any alleged agreement.

TEX.R.CIV.P. 11 provides:

.Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

It is undisputed that the alleged agreement failed to comply with the requirements of Rule 11. The rationale behind the rule is that oral agreements concerning suits are very liable to be misconstrued, forgotten and to beget misunderstandings and controversies. *Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex.1984). Since the requirements of Rule 11 were not met, any agreement regarding an abeyance of discovery is unenforceable, and any evidence that such an agreement existed is also inadmissible. Evidence regarding the existence of such an agreement would be as contested as the terms of the agreement itself. Therefore, admitting evidence that one party believed such an agreement existed would defeat the purpose of Rule 11 as surely as enforcement of the terms of the agreement would. Beyond all of this, even if such an agreement did exist and White knew about it, it still would have become painfully clear to him that the agreement was no longer in effect when Bath's attorneys began making demands for compliance and motions for sanctions; and the existence of the alleged agreement is no evidence of good faith on the part of White. Appellant's ninth point of error is without merit and is overruled.

The judgment of the trial court is affirmed.