Affirmed and Opinion filed September 5, 2006








Affirmed and Opinion filed September 5, 2006.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00482-CV

____________

 

JOHN CLARK, III, INDIVIDUALLY AND
D/B/A CELTIC CONSTRUCTORS, INC. AND BETTY STOVALL (KIT) CLARK, Appellants

 

V.

 

TOM BRES AND JAN BRES A/K/A JAN
HOLZINGER,
Appellees

 



 

On Appeal from the 80th
District Court

Harris County, Texas

Trial Court Cause No. 02-32596

 



 

O P I N I O N

In this appeal, appellants, John Clark, III, Individually
and d/b/a Celtic Constructors, Inc. (AClark@) and Betty
Stovall (Kit) Clark (ABetty Clark@), seek two
different forms of relief. First, Clark seeks reversal of the judgment against
him and remand for a new trial on the grounds of improper jury argument.
Second, Betty Clark, Clark=s trial counsel, seeks to have sanctions
levied against her reversed. We affirm.

 








Factual and Procedural Background

A.      The
Judgment Against Clark

In August 2001, Clark and appellees, Tom and Jan Bres,
entered into a residential construction contract in which Clark, a residential
contractor, agreed to remodel and construct an addition to appellees= home in exchange
for $250,000.00. The agreement would be amended one time raising the price to
$280,000.00. The relationship between Clark and appellees soured to the point
that Clark filed suit against appellees. Clark alleged appellees breached the
contract by failing to pay him for all work he had completed on their home.
Appellees filed an answer and counterclaim alleging breach of contract, theft,
fraud, unjust enrichment, and violations of the Deceptive Trade Practices Act (ADTPA@). From the
beginning of the litigation, appellees made it clear their case was not a
simple breach of construction contract case. Instead, appellees specifically
alleged that Clark had repeatedly lied and made misrepresentations to them
throughout the course of the project and that he stole approximately
$100,000.00 from them.

The parties appeared for trial on May 25, 2004. Prior to
voir dire, Clark raised the issue of whether appellees could discuss
allegations that Clark is a thief, a liar, a cheat, and a fraud. Appellees= counsel explained
to the trial court the case was not simply about shoddy work by Clark, but the
appellees= entire case was based on allegations that Clark had
defrauded them, lied to them, and had stolen approximately $100,000.00 from
them. Following that explanation, Clark raised no further objections, and the
trial court denied Clark=s motion in limine.








At the beginning of appellees= voir dire, appellees= counsel explained
to the venire panel: AThe evidence is going to show that this
gentleman, John Clark, lied to the Breses, defrauded the Breses, deceived the
Breses, breached his agreement with the Breses and essentially stole about
$100,000.00 of the Breses= money.@ The panel was
then asked more specific questions concerning these allegations. Clark did not
object to any of the comments or to any of the follow-up questions. Also during
voir dire, appellees= counsel mentioned that Clark was
represented by his mother, Betty Clark. At the end of the voir dire, Betty
Clark moved for a mistrial solely on the grounds that she had been identified
as being related to Clark. In her motion for mistrial, Clark=s counsel did not
mention anything about the discussion of Clark being a liar, a thief, a cheat,
and a fraud.

As plaintiff, Clark was the first to make an opening
statement. In her opening, Betty Clark repeatedly referenced appellees= calling Clark a
thief, a liar, a cheat and a fraud. At the beginning of his opening statement,
appellees= counsel discussed appellees= theory of the
case: AThe evidence will
show and we will prove that [Clark] lied to the Breses, deceived the Breses,
defrauded the Breses, breached his agreement with the Breses, and effectively
stole $100,000.00 from the Breses= money.@ From that
beginning, appellees= counsel went on to make numerous
references to Clark being a liar, a cheat, a thief, and a fraud throughout his
opening statement. Clark did not raise a single objection to any of these
statements.

During Clark=s presentation of
the evidence, Betty Clark called both appellees as well as Clark to testify.
With each of these witnesses, Betty Clark elicited testimony concerning
appellees= allegations that Clark was a liar, a thief, a cheat,
and a fraud. Initially, Ms. Bres testified Clark lied to appellees about his
purchase of windows and bricks to be used on appellees= home. Ms. Bres also
testified Clark had stolen $100,000.00 from appellees. When Mr. Bres was on the
witness stand, Betty Clark asked him if he said Clark had stolen money from
appellees and generally called Clark a cheat, a fraud, a liar, and a thief. In
addition, while questioning Clark about other, similar litigation he had been
involved in with customers, it was Betty Clark who first asked her client about
being a liar, a thief, a cheat, and a fraud. Specifically, Betty Clark asked:

Q. When you filed the suit, what usually happens, what do the people
that you sue usually do?

A. They start calling me a thief, a liar and a cheat.

...








Q. And do all your adversaries always call you a thief, a liar, a cheat
and a fraud?

A. I think that is going to be my initials, TLC.

Evidence was presented during trial supporting appellees= allegations that
Clark was a liar, a thief, a cheat, and a fraud. This included testimony that,
prior to entering into the contract, appellees asked Clark if he had
experienced any problems with his customers. In response to that question,
Clark represented to appellees that he had not been involved in any disputes
with his customers. In reality, as Clark=s own testimony
revealed, Clark had been involved in multiple lawsuits with his customers with
one dispute going to trial just days after he signed the contract with
appellees. There was also testimony that Clark told appellees he had purchased
bricks and windows to be used in appellees= home and had them
stored in a warehouse in north Houston. The reality was Clark had not purchased
these materials, and he admitted at trial he did not have a north Houston
warehouse. There was also testimony by Clark that, to get approval for a draw
worth $38,000.00, Clark represented to appellees and the lending bank that he
had $48,000.00 of appellees= money on hand in his construction
account, when, in fact, there was a negative balance in that account. Clark
also, despite being required to do so by the contract, could not produce a
single receipt to show how he had spent the appellees= money. In
addition, Clark admitted using the appellees= money, which was
supposed to be kept in a construction account and used only to pay for the work
on appellees= home, for such things as purchases at Spec=s Liquor, buying
drinks at icehouses, meals at restaurants, and paying his cellular phone bill.
The evidence also demonstrated that appellees paid Clark a net of approximately
$170,000.00 while Clark performed only $80,000.00 worth of work on appellees= house. Clark also
testified he does not give money back to his customers. Finally, despite
contracting with appellees to complete all of the work on appellees= house for
$280,000.00 (after the contract was amended), Clark testified he never intended
to complete the appellees= project for the contract price.








          As
plaintiff, Clark led off the final jury arguments. During her closing argument,
Betty Clark repeatedly denied Clark was a thief, a liar, a cheat, and a fraud.
She also argued the evidence did not support those accusations. In addition,
Betty Clark spent a large amount of her closing argument discussing the jury
charge in detail. Betty Clark specifically addressed the appellees= damages questions
and told the jury to Aput a big zero on the questions that ask
you how much the Breses are going to get.@ Finally, Betty
Clark explained to the jury how she thought they should answer Clark=s breach of
contract, fraud, conversion, and damages questions.

During appellees= closing argument,
appellees= counsel, while pointing out the evidence supporting
appellees= causes of action, emphasized appellees= accusations that
Clark was a thief, a liar, a cheat, and a fraud. In addition, appellees
presented the jury with an index of answers to the jury questions. While going
through this index of proposed answers, appellees= counsel explained
the evidence supporting each suggested answer.

The jury returned a unanimous verdict answering all
questions in favor of appellees. The trial court entered a final judgment based
on that verdict awarding appellees $140,000.00 in damages, $200,000.00
additional damages, attorney=s fees of $225,000.00 for preparation and
trial of the case, and additional attorney=s fees totaling
$55,000.00, in the event of appeals to the court of appeals and Supreme Court
of Texas in which appellees prevail. Clark filed a AMotion for Judgment
NOV or Alternatively Motion for New Trial,@ which the trial
court denied.

B.      The
Sanctions Against Betty Clark

During the course of discovery, Clark deposed Ms. Bres. Mr.
Bres was also present at the deposition. During the deposition, Betty Clark
asked Ms. Bres a number of times if she had a relationship with another man,
Tom. Ms. Bres denied having an intimate or romantic relationship with this
gentleman. Subsequently, Betty Clark asked the following:

Q.      Would you be surprised to learn that [Tom]
had said to a group of people at Woodrow=s that he considered you to be a sport f_ _ _  because you
are so engaged in athletic activities and working out?








After
appellees= counsel objected and instructed Ms. Bres not to
answer the question, the following exchange took place:

Ms. Clark:              I suggest
that you relax.

Mr. Shepherd:        I=m relaxed.

The Witness:                   I=m not.

Ms. Clark:              I didn=t imagine that you would be.

Prior to
the start of trial, the trial court granted a motion in limine excluding any
reference to the above line of questioning. In addition, just before opening
statements, the trial court informed the parties that it was reserving the
right to hold a Rule 215.3 hearing at the conclusion of the trial relative to
Betty Clark=s deposition questioning of Ms. Bres. On June 3, 2004, the trial court
issued and served a show cause order on Betty Clark ordering Betty Clark to
show cause why the trial court should not sanction her for discovery abuse
pursuant to Rule 215.3 of the Texas Rules of Civil Procedure and for Aprofessional misconduct during the
discovery process@ pursuant to the trial court=s inherent powers. The trial court
held the sanctions hearing on June 16, 2004. During the sanctions hearing, the
trial court stated Athe hearing that we are having this morning has been convened
pursuant to the Court=s inherent powers and the Court=s powers under the Rules of Civil
Procedure.@ The issues before the trial court included unprofessional conduct and
discovery abuse occurring during the deposition of Ms. Bres. When allegations
of the unprofessional conduct arose during the hearing, Betty Clark=s counsel objected that it exceeded
the scope of the notice given to her in the show cause order. In response to
Betty Clark=s objection, the trial court offered Betty Clark a continuance to prepare
her defense for any allegations she did not believe she was prepared to address
during the show cause hearing. Betty Clark declined that offer.








On
December 15, 2004, the trial court issued its order sanctioning Betty Clark. In
that order, the trial court found the line of questioning in the deposition of
Ms. Bres was conducted for the purposes of harassment, intimidation of the
witness, and unfair tactical advantage and was inconsistent with the conduct
required of an officer of the court. In addition, the trial court determined
the line of questioning was not reasonably calculated to lead to the discovery
of admissible evidence. By way of background to the incident leading to the
sanctions and in order to evaluate Betty Clark=s conduct and determine the
appropriate sanction, the trial court enumerated in its sanctions order some
other instances of Betty Clark=s obstruction of the discovery process and misconduct during
the trial. First, the trial court noted that during Clark=s deposition, at Betty Clark=s instruction, Clark repeatedly
refused to answer questions that were clearly relevant to issues involved in
the litigation and were subject to discovery. As a result of Clark=s refusal to answer these questions,
appellees were forced to file a motion to compel. At the conclusion of the
hearing on appellees= motion to compel, the trial court ordered Clark=s deposition be resumed and
admonished Betty Clark to review the applicable rules regarding proper conduct
of counsel at depositions. Despite this warning from the trial court, Betty
Clark=s conduct did not improve at Clark=s second deposition. Once again,
Betty Clark instructed Clark not to answer dozens of questions and then she
unilaterally terminated the deposition in violation of the trial court=s instructions. This led to a hearing
on appellees= second motion to compel at which time the trial court sanctioned Clark
for obstruction of the discovery process and awarded appellees attorneys= fees. Second, the trial court
observed that during the trial of the case, Betty Clark: (1) implied during her
closing argument that appellees were responsible for the lack of sound on a
significant videotape played to the jury when, in fact, the lack of sound was
the direct result of an evidentiary ruling of the trial court; (2) violated the
trial court=s ruling and instructions in limine during an earlier stage of the
trial by directly injecting the issue of the income and wealth of appellees
into the case in front of the jury when she asked Mr. Bres: AAnd you make about $50,000 a month?;@ and (3) repeatedly argued with the
trial court and disrupted the flow of the proceeding.








After
reviewing the totality of the circumstances, the trial court stated that Betty
Clark had violated the Texas Rules of Civil Procedure, flaunted the Texas
Lawyers Creed-A Mandate for Professionalism, and attempted to obstruct the
administration of justice through improper conduct and litigation tactics. In
the sanctions order, the trial court made findings of fact and conclusions of
law and ordered Betty Clark to pay $2,500.00 in sanctions and required her to
attend eight hours of Continuing Legal Education in legal ethics. Under the
trial court=s sanctions order, Betty Clark was to pay $2,000 to the District Clerk
and $500.00 to the District Clerk for deposit into the registry of the court to
be distributed to Ms. Bres as reimbursement for a portion of her relevant legal
fees and related costs resulting from Betty Clark=s misconduct.

Discussion

In two issues on appeal, Clark seeks the reversal of the
judgment entered against him. In both issues challenging the judgment, Clark
argues appellees engaged in incurable jury argument which requires reversal of
the judgment and remand for a new trial. In the remaining four issues raised in
this appeal, Betty Clark challenges the sanctions levied against her. In
challenging the sanctions award, Betty Clark argues the sanctions imposed by
the trial court violated her due process rights and improperly punished her for
violating the Texas Disciplinary Rules of Professional Conduct.

I.        Should
the Judgment Against Clark Be Reversed?

A.      Was
Appellees= Closing Argument
Incurable Jury Argument?

In his first issue, Clark argues appellees engaged in
incurable jury argument when appellees= counsel called
Clark a liar, a thief, a cheat, and a fraud during his closing argument. Clark
also argues appellees= argument was incurable since it implied
Clark and his counsel were engaged in a conspiracy. Clark must argue appellees= arguments are
incurable jury argument since he failed to lodge any form of contemporaneous objection
to them. Therefore, the initial question presented in this appeal is whether
Clark sustained his burden to prove appellees= closing argument
constituted incurable jury argument.

 








1.       Standard
of Review

Incurable jury argument exists when the argument is so
prejudicial or inflammatory that an instruction to the jury to disregard cannot
eliminate the harm. Otis Elevator Co. v. Wood, 436 S.W.2d 324, 333 (Tex.
1968). Therefore, when a jury argument is incurable, no objection is necessary
to preserve error.[1]
Clark Equip. Co. v. Pitner, 923 S.W.2d 117, 125 (Tex. App.CHouston [14th
Dist.] 1996, writ denied). In order to show jury argument is incurable, the
complainant must prove: (1) an improper argument was made; (2) that was not
invited or provoked; (3) that was not curable by an instruction, a prompt
withdrawal of the statement, or a reprimand by the trial court; and (4) that by
its nature, degree, and extent, constituted reversibly harmful error based on
an examination of the entire record to determine the argument=s probable effect
on a material finding. Id. How long the argument continued, whether it
was repeated or abandoned and whether there was cumulative error are proper
inquiries. Id. In addition, the complainant must show the probability
that the improper argument caused harm is greater than the probability that the
verdict was grounded on proper proceedings and evidence. Id. There are
only rare instances of incurable harm from improper argument. Standard Fire
Ins. Co. v. Reese, 584 S.W.2d 835, 839 (Tex. 1979).

2.       Was
Appellees= Argument that Clark was a Liar, a
Thief, a Cheat, and a Fraud Incurable Jury Argument?








A litigant is entitled to have his counsel argue the facts
of the case to the jury. Tex. Sand Co. v. Shield, 381 S.W.2d 48, 57B58 (Tex. 1964).
Trial counsel may properly discuss the reasonableness of the evidence as well
as the probative effect or lack thereof, of the evidence. Id. at 58.
This extends only to the facts and issues raised by the evidence admitted under
the rulings of the trial court. Id. In addition, attorneys may argue
reasonable deductions and inferences from the evidence properly before the
jury. Mundy v. Shippers, Inc., 783 S.W.2d 743, 745 (Tex. App.CHouston [14th
Dist.] 1990, writ denied). Trial counsel should be allowed wide latitude in
arguing the evidence and the reasonable inferences from the evidence to the
jury. Anderson v. Vinson Exploration, Inc., 832 S.W.2d 657, 667 (Tex.
App.CEl Paso 1992, writ
denied).

Appellees= jury argument referring to Clark as a
liar, a cheat, a thief, and a fraud was not error or improper because the
argument discussed matters in evidence. Arguing based on evidence in the record
is proper and is the purpose of closing argument. Tex. Sand, 381 S.W.2d
at 58. As an examination of the entire record demonstrates, the evidence
admitted at trial was sufficient for the jury to have found that Clark had in
fact lied to appellees, stolen appellees= money, cheated,
and defrauded appellees. Appellees= repeated use of
these terms, which again were supported by the evidence, does not convert it
into incurable error. Instead, such hyperbole for emphasis is an accepted
technique of oral advocacy and is a part of our legal heritage and language. Reese,
584 S.W.2d at 838.








Clark cites Southwestern Greyhound Lines v. Dickson,
236 S.W.2d 115, 118 (Tex. 1951) to support his argument that using the terms
liar, cheat, thief, and fraud during closing argument constitutes incurable
argument. However, Dickson does not support Clark=s position.
Initially in Dickson, the use of the terms liar, cheat, and fraud was
not supported by the evidence. Dickson was a personal injury case that
did not involve, as this case does, whether the plaintiff lied to, cheated,
stole from, and defrauded the defendants. See id. at 116B17. In addition,
the Texas Supreme Court stated Athere is no absolute rule against
expressing even a highly unfavorable opinion of an opposing party or witness.@ Id. at
119. The Texas Supreme Court continued: Athe salutory right
of counsel thus to speak his mind is subject to obvious limits, which excessive
language may exceed-either by connoting an idea or fact without support in the
record or by its very character as inflammatory.@ Id. In the
case at bar, a central issue was whether Clark had lied to, cheated, stolen
from, or defrauded appellees; therefore, appellees use of those terms during
closing argument does not constitute incurable jury argument. See Reese,
584 S.W.2d at 840 (citing City of Dallas v. Andrews, 236 S.W.2d 609, 611B12 (Tex. 1951))
(finding harmless error in an argument charging a party with fraud when there
was no objection and even when there was no support in the evidence for the
argument). 

The Texas Supreme Court has determined argument that is
otherwise excessive or improper is justified by invitation emanating from the
opposite side. Tex. Sand, 381 S.W.2d at 58. As plaintiff, Clark always
led off each stage of the trial. During her opening statement, Betty Clark
mentioned the appellees= referring to Clark as a thief, a liar, a
cheat, and a fraud numerous times. During Clark=s presentation of
the evidence, Betty Clark questioned both appellees, as well as Clark himself,
about appellees= allegations that Clark was a liar, a
thief, a cheat, and a fraud. This testimony culminated with Clark=s admission, in
response to a question asked by his own attorney, that his customers called him
a thief, liar, cheat, and a  fraud so frequently that he thought his initials
were going to be TLC. Finally, during her closing argument, Betty Clark
repeatedly denied Clark was a thief, liar, cheat, and a fraud and argued the
evidence did not support those allegations. Even if appellees= repeated use of
the terms liar, cheat, thief, and fraud constituted improper jury argument,
which it did not, appellees= use of these terms was invited by Clark=s argument and was
a proper response to Clark=s denial that he was a thief, a liar, a
cheat, and a fraud.

3.       Was
Appellees= Argument Discussing Clark=s Other Litigation
Incurable Jury Argument?








In his first issue on appeal, Clark also argues appellees
engaged in incurable jury argument when appellees discussed Clark=s litigation with
other customers. During the argument, appellees referenced the fact that in
most of those lawsuits Clark was represented by Betty Clark, his mother. Clark
argues appellees engaged in incurable jury argument when, in Clark=s view, they
discussed matters outside the record and implied Clark and his counsel were
engaged in a conspiracy. Appellees= argument was not
improper as it discussed matters within evidence and inferences from that
evidence. Tex. Sand, 381 S.W.2d at 58. Clark himself, in response to
questions from his counsel, testified about his other litigation with his
customers. Clark also testified he was not only represented by his mother in
this case but in most of his other litigation against customers as well.
Arguing a close connection between a party and his attorney, even arguing the
existence of a conspiracy between them, is not incurable argument. Reese,
584 S.W.2d at 840. Assuming that such argument is not supported by the evidence
and is improper, it is curable argument requiring an objection to preserve
error. Id. As Clark did not make any kind of objection during appellees= closing argument,
he waived any error that might have taken place. Id. at 840B41. We overrule
Clark=s first issue. 

B.      Did
Appellees Improperly Inform the Jury of the Legal Effect of Their Answers to
the Jury Questions?

In his second issue, Clark argues appellees improperly
informed the jury of the legal effect of their answers to the jury questions.
We disagree.

The rule that prohibits attorneys from informing the jury
of the effect of their findings is designed to prevent an appeal to jurors to
abandon their duty to answer the questions according to the evidence and
instead, to answer them so that a particular result will be reached. La.
& Ark. Ry. Co. v. Capps, 766 S.W.2d 291, 296 (Tex. App.CTexarkana 1989,
writ denied). A litigant must timely object to a jury being told the legal
effect of their answers to raise that point on appeal. Tex. Employer Ins.
Assoc. v. Loesch, 538 S.W.2d 435, 441B42 (Tex. Civ. App.CWaco 1976, writ
ref=d n.r.e.). Clark
did not register a single objection to appellees= argument
addressing the jury charge. Therefore, Clark waived any error that may have
taken place. Tex. R. App. P. 33.1;
Loesch, 538 S.W.2d at 442. 








Even if Clark had preserved this alleged error, the result
would be the same. As long as closing arguments are based on the evidence,
attorneys may suggest the correct answers to the jury questions. McDonough
Bros., Inc. v. Lewis, 464 S.W.2d 457, 463 (Tex. Civ. App.CSan Antonio 1971,
writ ref=d n.r.e.). During
his closing argument, appellees= counsel went through the jury questions
and urged the jury to answer the questions favorably to appellees. In each
instance, he backed up his discussion with references to specific evidence from
the trial supporting his position. Reasonable jurors are aware that counsel for
each party will recommend the answers to the jury questions at closing argument
to try to enable his client to prevail. Cavnar v. Quality Control Parking,
678 S.W.2d 548, 555 (Tex. App.CHouston [14th Dist.] 1984), rev=d in part on other
grounds, 696 S.W.2d 549 (Tex. 1985). As appellees= argument
addressing the jury charge was not a plea to the jury to abandon their duty to
answer the questions according to the evidence, but instead was a plea to
answer the questions in accordance with the evidence, there was no error
committed by appellees.

In addition, the jury charge contained twenty-two
questions. Each damages question in the charge was predicated on an affirmative
answer to the respective liability question. Therefore, if the jury read the
questions, the effect of their answers would be clear to an ordinary juror. If
jurors, through the exercise of ordinary intelligence, can determine the effect
of their answers to the issues, the argument does not constitute reversible
error because it does nothing more than tell the jury what it already knew. Capps,
766 S.W.2d at 295B96.

Finally, during closing argument, Betty Clark was the first
to address the jury. She was the first to go through the jury charge, and she
explained to the jury how she believed they should answer the questions.
Therefore, assuming appellees= explanation of how the jury should answer
the jury questions was improper, which it was not, appellees= counter-argument
was invited by Clark=s argument. Tex. Sand, 381 S.W.2d
at 58. We overrule Clark=s second issue.

II.       Should
the Sanctions Against Betty Clark be Reversed?

A.      Standard
of Review








Pursuant to Rule 215.3 of the Texas Rules of Civil
Procedure, a trial court may sanction any party who perpetrates discovery
abuses. White v. Bath, 825 S.W.2d 227, 229 (Tex. App.CHouston [14th
Dist.] 1992, writ denied). In addition, a trial court possesses the inherent
power to discipline an attorney=s behavior through the imposition of
sanctions in appropriate cases. In re Bennett, 960 S.W.2d 35, 40 (Tex.
1997). Even in the absence of an applicable rule or statute, courts have the
authority to sanction parties for bad faith abuses if it finds that to do so
will aid in the exercise of its jurisdiction, in the administration of justice,
and the preservation of its independence and integrity. Roberts v. Rose,
37 S.W.3d 31, 33 (Tex. App.CSan Antonio 2000, no pet.). The trial
court is not limited to considering only the specific violation for which
sanctions are finally imposed, but it may consider everything that has occurred
during the history of the litigation. White, 825 S.W.2d at 230.  In the
case at bar, pursuant to both Rule 215.3 and its inherent powers, the trial
court sanctioned Betty Clark for her conduct during the deposition of Ms. Bres.

The decision to impose a sanction is left to the discretion
of the trial court and will be set aside only upon a showing of abuse of
discretion. McWhorter v. Sheller, 993 S.W.2d 781, 788 (Tex. App.CHouston [14th
Dist.] 1999, pet. denied). The trial court is given the broadest discretion in
imposing such sanctions and in choosing the appropriate sanctions. White,
825 S.W.2d at 229. The test for abuse of discretion is whether the trial court
acted without reference to any guiding rules or principles, or whether under
the circumstances of the case, the trial court=s action was
arbitrary or unreasonable. Id. at 230. In determining whether the trial
court abused its discretion, the appellate court must ensure the sanctions were
appropriate and just. Am. Flood Research, Inc. v. Jones, 192 S.W.3d 581,
583 (Tex. 2006) (per curiam). AIn reviewing sanctions orders, the
appellate courts are not bound by a trial court=s findings of fact
and conclusions of law; rather, appellate courts must independently review the
entire record to determine whether the trial court abused its discretion.@ Id. In
addition, the power to sanction is limited by the due process clause of the
United States Constitution. In re Bennett, 960 S.W.2d at 40. Due process
requires that a party be given adequate notice and an opportunity to be heard. Id.








B.      Did the
Trial Court Give Betty Clark Inadequate Notice of the Complaints Against Her,
Thus Violating Her Due Process Rights?

In her first issue on appeal, Betty Clark argues she did
not receive full notice of the conduct, which the trial court was considering
for possible sanctions. Imposing sanctions on a party without notice and an
opportunity to be heard would violate the requirements of due process.  Braden
v. S. Main Bank, 837 S.W.2d 733, 738 (Tex. App.CHouston [14th
Dist.] 1992, writ denied). Betty Clark cites three out of the ten findings of
fact included in the trial court=s December 15,
2004 sanctions order in support of her argument her due process rights were
violated. Specifically, Betty Clark complains of the trial court=s findings that:
(1) she significantly interfered with the legitimate exercise of the
traditional core functions of the trial court; (2) the sanctions levied against
her were necessary to ensure respect for the enforcement of lawful orders of
the trial court; and (3) the sanctions are reasonable to enforce the trial court=s control over all
court proceedings and to ensure that justice is done without undue delay. In
Betty Clark=s view, these three findings of fact establish the
trial court violated her due process rights by sanctioning her for conduct
beyond the scope of the Show Cause Order. We disagree.

Initially, Betty Clark misconstrues the purpose and effect
of findings of fact contained in a discovery sanctions order. If a trial court
makes findings of fact to support its discovery sanctions, the findings are not
treated like findings pursuant to Rule 296 which involve non-jury trials on the
merits. Jefa Co. v. Mustang Tractor and Equip. Co., 868 S.W.2d 905, 910
(Tex. App.CHouston [14th Dist.] 1994, writ denied). The findings
of fact are not binding on the reviewing court. Id. The purposes of
findings of fact to support the imposition of discovery sanctions are to: (1)
aid appellate review through a guided analysis; (2) assure judicial
deliberation; and (3) enhance the deterrent effect of the sanctions order. Id.
During appellate review, we make an independent review of the entire record,
including the circumstances surrounding the alleged discovery abuse, to
determine if the trial court abused its discretion in imposing the sanctions. Am.
Flood Research, 192 S.W.3d at 583.








Here, the trial court served its Show Cause Order on Betty
Clark on June 3, 2004. The Show Cause Order indicated the trial court would
address the following issues during the sanctions hearing:

At that time, the court will
conduct a hearing pursuant to Rule 215.3 of the Texas Rules of Civil Procedure.
The Court Orders Ms. Clark to
appear at the hearing to show cause why it should not assess sanctions against
her for discovery abuse.

 

The court also has inherent powers
to ensure that all proceedings be conducted with dignity and in an orderly and
expeditious manner. Accordingly, the court Orders
Ms. Clark to show cause at that time why she should not be sanctioned for
professional misconduct during the discovery process.

 

During
the sanctions hearing, the trial court=s questions all
related to Betty Clark=s conduct during the deposition of Ms.
Bres. The trial court=s sanctions order states:

The issues relative to the show cause hearing arose in the context of
[Betty] Clark=s deposition examination of Jan
Bres. During that examination, [Betty] Clark, among other things, inquired on
several occasions whether Ms. Bres, a married woman, had a romantic
relationship with another man. These questions were asked in front of Ms. Bres= husband, who was present at the
deposition. [Betty] Clark=s inquiries culminated with a
question that included obscene language and explicit sexual innuendo. The line
of questioning (and particularly the final question), viewed in context, cannot
be construed by this Court as reasonably calculated to lead to the discovery of
admissible evidence. On the contrary, it is clear that this line of inquiry was
conducted for the purpose of harassment, intimidation of the witness, and
unfair tactical advantage. [Betty] Clark=s conduct was completely inconsistent with that of an
officer of the Court.

The
foregoing language demonstrates the trial court sanctioned Betty Clark for her
conduct during the deposition of Ms. Bres. The findings of fact Betty Clark
complains about all pertain to whether she engaged in improper conduct during
the discovery process, of which charge she was given full notice. The references
in the sanctions order to other conduct by Betty Clark served as background
information to show: (1) why a lesser sanction was not a viable alternative in
this case; and (2) the trial court had considered all of the relevant
circumstances in the case before sanctioning Betty Clark.








Betty Clark=s argument that her due process rights
were violated because she was entitled to but did not receive detailed notice
equivalent to a criminal indictment is also misguided. There is no requirement
for the type of detailed notice demanded by Betty Clark. All due process
requires is notice of the trial court=s intent to
consider imposing sanctions and an opportunity to be heard. Jefa, 868
S.W.2d at 910. There is not even a requirement of an oral hearing. Cire v.
Cummings, 134 S.W.3d 835, 844 (Tex. 2004). There is no question Betty Clark
was served with the Show Cause Order, appeared at the sanctions hearing, and
had an opportunity to address the sanctions issue. In addition, after counsel
for appellees argued that Betty Clark=s conduct
warranted sanctions, Betty Clark=s counsel responded
by  telling the trial court he did not believe the notice found in the Show
Cause Order covered all subjects being addressed at the sanctions hearing. In
response, the trial court asked if Betty Clark desired a continuance of the
hearing in order to prepare to address any subjects she did not believe she was
ready to discuss that day. Betty Clark rejected this offer of a continuance
three separate times. By passing up the trial court=s offer of a
continuance in the sanctions hearing, Betty Clark waived any deficiencies that
may have existed in the notice she received. See Negrini v. Beale, 822
S.W.2d 822, 823B24 (Tex. App.CHouston [14th Dist.]
1992, no writ) (holding a party waived any error that may have existed in
summary judgment notice where the party received notice of the hearing,
appeared at it, and did not ask for a continuance).

After an independent review of the entire  record, we
conclude Betty Clark was given adequate notice of the trial court=s intention to
consider sanctions and was given an opportunity to respond. Due process was not
violated in this case. See In re Bennett, 960 S.W.2d at 40. We overrule
Betty Clark=s first issue.

C.      Did the
Trial Court Exceed Its Authority to Sanction When It Referenced the Texas
Disciplinary Rules of Professional Conduct in Its Sanctions Order?

In her second issue, Betty Clark argues the trial court=s sanctions order
usurped the exclusive function of the State Bar of Texas grievance procedure by
referencing  the Texas 








Disciplinary
Rules of Professional Conduct and thereby violated her due process rights.

As discussed above, the trial court sanctioned Betty Clark
for her inappropriate conduct during the deposition of Ms. Bres. Rule 215.3 of
the Texas Rules of Civil Procedure specifically allows sanctions to be entered
against a party for abusing the discovery process in seeking, making, or
resisting discovery. Tex. R. Civ. P. 215.3.
Texas courts also possess the inherent power to discipline an attorney=s behavior. In
re Bennett, 960 S.W.2d at 40. A court may call upon this power to aid in
the exercise of its jurisdiction, in the administration of justice, and in the
preservation of its independence and integrity. Eichelberger v. Eichelberger,
582 S.W.2d 395, 398 (Tex. 1979). When considering the imposition of sanctions,
a trial court is not limited to considering only the specific violation for
which sanctions are finally imposed, but it may consider everything that has
occurred during the history of the litigation. White, 825 S.W.2d at 230.

The only reference in the sanctions order to the Texas
Disciplinary Rules of Professional Conduct occurs in the trial court=s conclusions of
law. As noted above, we are not limited by the trial court=s findings of fact
and conclusions of law. Am. Flood Research, 192 S.W.3d at 583. Instead,
we must independently review the entire record of the trial court proceedings
to determine whether the trial court abused its discretion in sanctioning Betty
Clark. Having made an independent review of the entire record, we conclude the
sanctions levied on Betty Clark for her abusive and contumacious conduct during
the deposition of Ms. Bres were appropriate and just under Rule 215 and the
trial court=s inherent powers. Accordingly, the trial court did
not abuse its discretion in sanctioning Betty Clark. Even assuming the trial
court erred in citing to alleged violations of the Texas Disciplinary Rules of
Professional Conduct, this reference did not result in an improper judgment
because there were other, proper grounds to support the sanctions order. See
Tex. R. App. P. 44.1. We overrule
Betty Clark=s second issue.








D.      Did the
Trial Court Violate Betty Clark=s Due Process
Rights When It Imposed a $2,500.00 Sanction Without Obtaining Betty Clark=s Waiver of a
Right to a Jury Trial?

In her third issue, Betty Clark argues that since she was
sanctioned $2,500.00, her due process rights were violated because she was
entitled to a jury trial. While recognizing the trial court=s authority to
levy the sanctions pursuant to its inherent power,[2]
Betty Clark argues since the sanctions were for more than $500.00, they
constitute a punishment for a serious offense thus entitling her to a jury
trial. We disagree.








It is not the law of Texas that any sanction over $500.00
levied by a trial court requires a jury trial. The cases cited by Betty Clark
in support of her argument can each be distinguished as none of them address
sanctions levied by a trial court for discovery abuse or improper conduct in
the discovery process. Instead, each of the cases cited by Betty Clark concern
contempt proceedings involving penalties, including imprisonment, far more
serious than those at issue here. See Ex Parte Sproull, 815 S.W.2d 250,
250 (Tex. 1991) (per curiam) (holding in a habeas proceeding that an alleged
contemnor, sentenced to twenty-two years= confinement for
failure to pay child support, had a constitutional right to a jury trial as he
faced a serious charge of criminal contempt; defining a serious charge of
criminal contempt as a charge for which the confinement may exceed six months);
Ex Parte Griffin, 682 S.W.2d 261, 262 (Tex. 1984) (holding in a
habeas proceeding that a contempt action in which the contemnor is fined
$104,000.00 and ordered to jail for thirty days is a serious offense, and the
contemnor was entitled to a jury trial); Ex Parte McNemee, 605 S.W.2d
353, 356 (Tex. App.CEl Paso 1980, orig. proceeding), disapproved
of on other grounds by Huff v. Huff, 648 S.W.2d 286 (Tex. 1983) (holding by
the court of appeals that, if the punishment for contempt is more than six
months, imprisonment constitutes a serious offense and the relator was entitled
to a jury trial). Betty Clark=s citation of section 21.002 of the Texas
Government Code also does not support her argument as it addresses situations
where a court order has been violated. See Tex. Gov=t Code Ann. ' 21.002 (Vernon 2004). Here, Betty Clark
was sanctioned for abusing the discovery process and for improper conduct
during the discovery process, not for violating a court order. As Betty Clark
was not entitled to a jury trial on the issue of sanctions, we overrule her
third issue.

E.      Did the
Trial Court Improperly Sanction Betty Clark by Assessing Only One Punishment
Covering All of Its Findings?








Betty Clark=s argument that the trial court violated
her due process rights by issuing only one order is without merit. In support
of this argument, Betty Clark once again cites cases that do not address
sanctions levied by a trial court for discovery abuse or improper conduct in
the discovery process. Instead, each of the cases cited by Betty Clark concerns
contempt proceedings. See Ex Parte Lee, 704 S.W.2d 15, 17 (Tex. 1986)
(holding in a  habeas proceeding that if one punishment is assessed for more
than one act of contempt, and one of those acts is not punishable by contempt,
the entire judgment is void); Ex Parte Lillard, 314 S.W.2d 800, 806
(Tex. 1958) (holding in a habeas proceeding that a finding of contempt cannot
be based on a void judgment); Ex Parte Stanford, 557 S.W.2d 346, 349B50 (Tex. Civ. App.CHouston [1st
Dist.] 1977, orig. proceeding) (holding in a habeas proceeding that when one
penalty is affixed for more than one act of contempt, and it is determined the
relator could not be held in contempt for one of the acts, the whole judgment
is void). In addition, the trial court=s order
sanctioning Betty Clark was directed at a single incident: Betty Clark=s conduct during
the deposition of Ms. Bres. The references in the sanctions order to other acts
by Betty Clark during the litigation were to (1) make clear the trial court had
carefully analyzed Betty Clark=s conduct, (2) demonstrate the trial court
considered all of the relevant circumstances in the case, and (3) illustrate
why a lesser sanction was not viable. As we have found the sanctions order did
not violate Betty Clark=s due process rights, we overrule Betty
Clark=s fourth issue.

Conclusion

Having overruled both of Clark=s issues on appeal
and all of Betty Clark=s issues on appeal, we affirm the trial
court=s Final Judgment
and December 15, 2004 Sanctions Order.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Opinion filed September 5, 2006.

Panel consists of
Justices Anderson, Edelman, and Frost.

   

 

 









[1]  While no contemporaneous objection is required in
order to raise incurable jury argument on appeal, a party must include
incurable jury argument as a point in a motion for new trial. Tex. R. Civ. P.  324(b)(5). Clark
did include incurable jury argument in his motion for new trial, and therefore,
preserved this issue for appeal.





[2]  Although she recognized the trial court=s inherent authority to impose the sanctions at
issue here, Betty Clark states courts have no authority under Rule 215.3 to
assess a monetary fine unrelated to attorney=s fees. In Betty Clark=s view, the only sanctions permitted under Rule 215.3 are
those specifically referenced in Rule 215.2(b), and therefore, any monetary
sanctions must be limited to the attorney=s fees incurred by the innocent party. We disagree. The
Texas Supreme Court has recognized that discovery abuse is widespread, and it
has given trial courts broad authority to curb such abuse. Braden v. Downey,
811 S.W.2d 922, 930 (Tex. 1991). The legitimate purposes of discovery sanctions
are threefold: (1) to secure compliance with the discovery rules; (2) to deter
other litigants from similar misconduct; and (3) to punish violators. Butan
Valley, N.V. v. Smith, 921 S.W.2d 822, 827 (Tex. App.CHouston [14th Dist.] 1996, no
writ). A trial court is not limited to the laundry list of specifically
authorized sanctions found in Rule 215.2(b). Braden v. S. Main Bank, 837
S.W.2d 733, 740 (Tex. App.CHouston [14th Dist.] 1992, writ denied). In this case, a sanction
limited to the attorney=s fees incurred by Ms. Bres, the
innocent party, would have been meaningless since the attorney=s fees she incurred as a direct
result of Betty Clark=s sanctionable conduct were minimal
and would not have accomplished any of the purposes for discovery sanctions.